**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAN L. BOGER, on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No. |
| CITRIX SYSTEMS, INC., | : : : | |
| Defendant. | : : | |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff, Dan L. Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Citrix Systems, Inc. ("Citrix") ("Defendant") initiated automated telemarketing calls to Mr. Boger and other putative class members without their prior express written consent.

3. Also in violation of the TCPA, Citrix failed to maintain adequate procedures to maintain an internal Citrix do not call list.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of

proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5.  A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

6.  Plaintiff Dan Boger is a resident of the state of Maryland and this District.

7.  Defendant Citrix Systems, Inc. is a corporation organized in Delaware with its principal place of business in Florida, and conducts business in this District, including through the making of telemarketing calls, as it did with the Plaintiff.

### Jurisdiction & Venue

8.  The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

9.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims occurred here.

### The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must

be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The TCPA's Internal Do Not Call List Requirements</u>

15. The TCPA implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

16. This includes the requirements that:

- "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list" (47 C.F.R. 64.1200(d)(1));

- "Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list" (47 C.F.R. 64.1200(d)(2));

- Persons or entities making telemarketing calls must honor do-not-call requests within a reasonable time, not to exceed thirty days, from the date such request is made (47 C.F.R. 64.1200(d)(3));

- "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made." (47 C.F.R. 64.1200(d)(6)).

17. Pursuant to 47 C.F.R. 64.1200(e), the rules set forth above in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…."

## Factual Allegations

18. Citrix sells software and related products and services for workplace productivity.

19. To generate business through sales, Citrix relies on telemarketing.

20. One of the telemarketing strategies used by Citrix involves the use of an automatic telephone dialing system ("ATDS") to solicit customers through the use of a predictive dialer.

21. Citrix engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

22. Through this method, Citrix shifts the burden of wasted time to the consumers it calls with unsolicited messages.

<u>Calls to Mr. Boger</u>

23. Mr. Boger is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

24. Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

25. Mr. Boger received five automated calls from Citrix to that number.

26. On September 4 and 10, 2015, Citrix placed automated calls to Mr. Boger's cellular telephone number, (703) 328-XXXX. The caller each time was "Dillon" at "Citrix" and on each call he proceeded to promote Citrix products and services.

27. On December 14, 2015, Citrix placed another automated call to Mr. Boger's cellular telephone number, (703) 328-XXXX. The caller was "Adam" at "Citrix" and he proceeded to promote Citrix products and services.

28. On May 3, 2016, Citrix placed another automated call to Mr. Boger's cellular telephone number, (703) 328-XXXX. The caller was "Jason" at "Citrix," calling from the caller ID (919) 948-1567. Mr. Boger explicitly told the caller to add him to their Do Not Call list and asked for a manager. He spoke with Trevor Jones, Vertical Manager, and asked why he was still receiving calls from Citrix even though he had previously told it to stop calling him. Mr. Jones' response was that maybe Mr. Boger spoke with someone on a different team.

29. Even after speaking with a manager on the May 3, 2016 call, Citrix continued to make automated calls to Mr. Boger's cellular telephone number, (703) 328-XXX. Mr. Boger received such a call from an unidentified female representative of "Citrix" on May 25, 2016 from the caller ID 919-948-1773.

30. On the May 25, 2016 call, Mr. Boger told the caller that he had previously and repeatedly requested to be placed on Citrix's Do Not Call list and, again, asked for a manager.

31. Mr. Boger spoke with Sam Schlunz, manager of the Sales Team. Mr. Schlunz told Mr. Boger that Citrix has multiple Do Not Call lists and that he would place him on their Do Not Call list.

32. Plaintiff then sent correspondence to Citrix on June 16, 2016 asking it for any evidence it may have of his consent to call him, which he asserted did not exist.

33. Brian Benfer, Senior Manager at Citrix, responded via email. He confirmed that all of the call dates Plaintiff referenced were accurate, but provided no evidence of Plaintiff's consent to the calls. He further confirmed that while Citrix's notes in its database stated that

Plaintiff had requested twice to be added to Citrix's Do Not Call list prior to his request on May 25, 2016, his number had not been added to Citrix's Do Not Call list.

34.    Plaintiff alleged in his correspondence to Citrix that an ATDS was used to place the calls to him. He had noticed that there was a distinctive pause before sales representatives came onto the line that was indicative of use of a predictive dialer. Rather than make any attempt to refute Plaintiff's allegation that an ATDS was used, Citrix informed him that it did not intend to call cellular phones, as using an ATDS to call cellular phones is prohibited by the TCPA. Citrix told him "its not clear right now how a cell phone got through."

35.    Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

36.    Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class members.

### Class Action Allegations

37.    As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

38.    The classes of persons Plaintiff proposes to represent is tentatively defined as:

Class 1

> All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Class 2

All natural persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

39. Excluded from the classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

40. The classes as defined above are identifiable through phone records and phone number databases.

41. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

42. Plaintiff is a member of the classes.

43. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following;

    a. Whether Defendant used an ATDS to send telemarketing calls;

    b. Whether Defendant violated the TCPA by failing to implement adequate procedures to maintain an internal do-not-call list;

    c. Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call;

    d. Whether Defendant's TCPA violations were negligent, willful, or knowing

    e. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions.

44. Plaintiff's claims are based on the same facts and legal theories as class members, and therefore are typical of the claims of class members.

45. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

46. The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiff.

47. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

48. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

49. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's provisions
### prohibiting autodialer calls to cell phones

50. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

51. The Defendant violated the TCPA by (a) initiating a telephone call using an automated dialing system or prerecorded voice to telephone numbers assigned to a cellular telephone service, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* 47 C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

52. The Defendant's violations were negligent and/or knowing.

### Count Two:
### Violation of the TCPA's Do Not Call provisions

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. The foregoing acts and omissions of the Defendant constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity.  47 C.F.R. 64.1200(d).

55. The Defendant failed to maintain an internal do-not-call list;

56. The Defendant failed to train its personnel as to the existence of and/or use of a do-not-call list;

57.  The Defendant did not honor do-not-call requests, much less for five years as required.

58. The Defendant's violations were willful and/or knowing.

### Count Three:
### Violation of the Maryland Telephone Consumer Protection Act

59. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

60. The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA") which prohibits a person from violating the TCPA.

61. As a result of the Defendant's violations of the Maryland TCPA, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call that violates the statute as well as their attorney fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. That the Court certify the proposed classes;

B. That the Court appoint Plaintiff as class representative;

C. That the Court appoint the undersigned counsel as counsel for the classes;

D. That the Court enter a judgment permanently enjoining the Defendant from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

E. That the Court enter a judgment enjoining Defendant from making telemarketing calls until it establishes adequate procedures for maintenance of an internal do-not-call list are in place;

F. That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendant's compliance with the TCPA;

G. That the Court enter a judgment awarding Plaintiffs and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

      H.      An award of attorneys' fees and costs to counsel for Plaintiff and the classes, as permitted by law;

      I.      Such other relief as the Court deems just and proper.

JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF, Dan Boger,
By his attorneys


_____/s/_____
Stephen H. Ring
STEPHEN H. RING, PC
9901 Belward Campus Drive, Suite 175
Rockville, Maryland 20850
(301) 563-9249
USDC-MD Attorney No. 00405
shr@ringlaw.us

Joseph F. Murray
Jonathan Misny
MURRAY MURPHY MOUL + BASIL LLP
1114 Dublin Road
Columbus, OH  43215
Telephone:  614.488.0400
Facsimile:  614.488.0401
E-mail:  tiffany@mmmb.com
Subject to *pro hac vice* admission

Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone (617) 485-0018
Facsimile (508) 318-8100
https://www.paronichlaw.com
Subject to *pro hac vice* admission

Attorneys for Plaintiff