**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| DAN L. BOGER, on behalf of himself and others similarly situated, | |
| Plaintiff, | C.A. No: 8:19-cv-01234-PX |
| vs. | |
| CITRIX SYSTEMS, INC., | |
| Defendant. | |

**DEFENDANT CITRIX SYSTEMS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS AND TO STRIKE**

## I.  INTRODUCTION

Defendant Citrix Systems, Inc. respectfully urges the Court to dismiss Plaintiff Dan L. Boger's Complaint in its entirety and with prejudice.  Plaintiff alleges two Telephone Consumer Protection Act ("TCPA") claims and one Maryland Telephone Consumer Protection Act ("Maryland TCPA") claim – as discussed below, Plaintiff has not and cannot adequately allege any of these claims.

Plaintiff's first TCPA claim, premised on alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii) must be dismissed because Plaintiff fails to allege use of an Automatic Telephone Dialing System ("ATDS").  As numerous courts have held, and as FCC Commissioner Michael O'Rielly recently confirmed, the TCPA's statutory language is clear – technology qualifies as an ATDS only if it can *generate* telephone numbers.  Plaintiff does not attempt to allege, and cannot allege, that calls were made using technology that generated his telephone number.

Plaintiff's second TCPA claim, premised on alleged violations of 47 C.F.R. § 64.1200(d) must likewise be dismissed.  Section 64.1200(d) only regulates calls to "residential telephone subscriber[s]" – Plaintiff fails to allege why his cellular telephone number qualifies as a residential telephone.  Plaintiff's remaining allegations – in which Plaintiff concedes he was placed on a do-not-call list and which do not allege calls made thirty (30) days after his do-not-call request – confirm Plaintiff does not have a Section 64.1200(d) claim.

Plaintiff's third claim, premised on the Maryland TCPA, is derivative of Plaintiff's federal TCPA claims and falls with them.  Additionally, the claim is partially barred by the Act's three-year statute of limitations and is subject to dismissal because Plaintiff cannot use the state law claim as a vehicle to increase the amount of statutory damages to which he claims he is entitled.  Nor can Plaintiff purport to bring the state law claim on behalf of non-Maryland residents who have no connection to this forum.

In the event the Complaint is not dismissed outright and with prejudice, Citrix respectfully submits that Plaintiff's nationwide class definitions should be stricken (or the claims dismissed to the extent they are purportedly brought on behalf of non-Maryland residents).  The U.S. Supreme Court has confirmed that if Plaintiff is not proceeding under a theory of general jurisdiction – which he is not – Plaintiff can only pursue claims for which specific jurisdiction exists.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  Because specific jurisdiction does not exist with respect to purported claims of non-Maryland residents, Plaintiff cannot proceed with nationwide class definitions.

## II.    <u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff alleges receiving five calls on his cellular telephone on September 4, 2015, September 10, 2015, December 14, 2015, May 3, 2016, and May 25, 2016.  Compl. at ¶¶ 24-28, 30.  Plaintiff alleges that "[o]n May 3, 2016 [he] explicitly told the caller to add him to their Do Not Call list."  *Id.* at ¶ 28.  Plaintiff does not allege having received any other calls after May 25, 2016 and claims a manager told Plaintiff "that Citrix has multiple Do Not Call lists and that he would place him on their Do Not Call list."  *Id.* at ¶  31.

Plaintiff alleges two Telephone Consumer Protection Act claims premised on alleged violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(d).  Compl., ¶ 50-58.  Plaintiff alleges a third claim premised on the Maryland TCPA, which is derivative of Plaintiff's federal claims.  *Id.* at ¶ 59-61.

Though Citrix is not subject to general jurisdiction in the District of Maryland,[1] Plaintiff purports to represent two nationwide classes:

<u>Class 1</u>

All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

<u>Class 2</u>

All natural persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) which constitute telemarketing; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

---

[1] Plaintiff alleges that Citrix is incorporated in Delaware and that its principal place of business is in Florida.  Compl., ¶ 7.

Compl., ¶ 38.  As discussed below, the Complaint must be dismissed in its entirety and with prejudice.

## III.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED

### A.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Unadorned conclusory allegations," however, "are not entitled to the assumption of truth."  *Id.* (*quoting Iqbal*).  Instead, a complaint "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Iqbal*).  A motion to dismiss shall be granted where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," leaving the complaint short of the "the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Iqbal* and *Twombly*).

Additionally, under Fed. R. Civ. P. 12(f), the Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  The rule allows the Court to act "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f).

**B.      Plaintiff's First Claim Fails to Allege Use of an ATDS**

To state a claim under 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff must plead, among other things, use of an Automatic Telephone Dialing System ("ATDS").  Plaintiff fails to do so, warranting dismissal of his first claim.

The TCPA defines an ATDS as equipment with the "capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  As one District Court in the Fourth Circuit recently confirmed, a complaint fails to allege use of an ATDS where the plaintiff does not allege facts confirming the phone calls were made with equipment that "*us[ed] a random or sequential number generator*."  *Snow v. GE*, No. 18-cv-511, 2019 U.S. Dist. LEXIS 99760, *18 (E.D.N.C. June 14, 2019) (dismissing complaint with prejudice on the basis that an ATDS was not adequately alleged; emphasis added).

In addition to being consistent with the TCPA's plain statutory language, the *Snow* Court's holding is consistent with those of numerous other courts concluding that a plaintiff must allege and establish telephone number *generation* to show that an ATDS was used:

- *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming orders excluding expert reports and granting summary judgment in defendant's favor because the reports "d[id] not shed light on the key factual question actually at issue in this case – whether the Email SMS System functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers . . . .");

- *Richardson v. Verde Energy USA, Inc.*, 354 F.Supp.3d 639, 651 (E.D. Pa. 2018) ("[A] predictive dialing device that merely dials numbers from a stored list of numbers – rather than having generated those numbers either randomly or sequentially – is not an ATDS.");

- *Pinkus v. Sirius XM Radio, Inc.*, 319 F.Supp.3d 927, 935 (N.D. Ill. 2018) (granting motion for judgment on the pleadings and holding that a predictive dialer does not qualify as an ATDS "if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them");

- *Lord v. Kisling, Nestico & Redick, LLC*, No. 17-cv-01739, 2018 U.S. Dist. LEXIS 116288, *6-*7 (N.D. Ohio July 12, 2018) (dismissing complaint and holding that a system's potential ability "of sending bulk or mass messages without human intervention is irrelevant" where plaintiffs had not alleged any facts showing use of "a system that has the ability to store or produce telephone numbers to be called using a random or sequential number generator");

- *Roark v. Credit One Bank*, No. 16-CV-173, 2018 U.S. Dist. LEXIS 193252, *7 (D. Minn. Nov. 13, 2018) ("[T]he correct inquiry is whether a device can generate numbers to dial either randomly or sequentially.");

- *Glasser v. Hilton Grand Vacations Co., LLC*, 341 F.Supp.3d 1305, 1310 (M.D. Fla. Sept. 24, 2018) ("Plaintiff's focus on the dialing of the numbers is misplaced.  Nothing in the record demonstrates that Defendant's IMC System generated numbers and then called them.");

- *Kloth-Zanard v. Bank of Am.*, No. 15-cv-1208, 2019 U.S. Dist. LEXIS 72425, *28 (D. Conn. Apr. 30, 2019) (Plaintiff "has not submitted any evidence to suggest that SLS used an ATDS – a device with the capacity to produce telephone numbers 'using a random or sequential number generator' – to call her.").

Less than two months ago, FCC Commissioner Michael O'Rielly confirmed that technology needs to *generate* telephone numbers to qualify as an ATDS and critiqued decisions finding the opposite:[2]

> Unfortunately, the DC Circuit victory did not stem that tide, as a patchwork of interpretations by both federal circuit and district courts flowed in response, including those that illogically found the FCC's 2003 and 2008 orders defining an ATDS to be controlling post-*ACA*.  And, that just pales in comparison to the medley of courts that have chosen to ignore the DC Circuit and instead follow the 9th Circuit's extremely misguided and breathtakingly expansive definition of ATDS as a device that stores numbers to be called, irrespective of whether they have been generated by a random or sequential number generator.  (Statutory text? What statutory text?) . . . . What a mess.[3]

---

[2] The FCC is tasked with interpreting the TCPA and issuing regulations.  Accordingly, Plaintiff alleges the FCC is "the agency Congress vested with authority to issue regulations implementing the TCPA."  Compl., ¶ 12.

[3] O'Rielly Remarks Before the ACA Int'l Washington Insights Conference, May 16, 2019, https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf, attached as Exhibit A to Request for Judicial Notice.

Here, Plaintiff alleges no actual facts claiming that Citrix called him using technology that can randomly or sequentially generate telephone numbers.  Nor can Plaintiff make those allegations by amending his Complaint because Citrix in fact does not use equipment that randomly or sequentially generates numbers.  Consistent with the TCPA's statutory language, *Snow*, *Dominguez*, the substantial number of additional decisions holding that number generation is required, and Commissioner O'Rielly's latest comments, Plaintiff's 47 U.S.C. § 227(b)(1)(A)(iii) claim must be dismissed with prejudice.

### C.      Plaintiff's Do-Not-Call Claim Must be Dismissed with Prejudice

In addition to his 47 U.S.C. § 227(b)(1)(A)(iii) claim, Plaintiff attempts to allege a second claim premised on 47 C.F.R. § 64.1200(d).  In relevant part, 47 C.F.R. § 64.1200(d) states: "No person or entity shall initiate any call for telemarketing purposes to a *residential telephone subscriber* unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.  The procedures instituted must meet the following minimum standards:

---

In his speech, Commissioner O'Rielly referenced *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) as the "DC Circuit victory."  There, the U.S. Court of Appeals for the D.C. Circuit invalidated prior FCC orders to the extent they concluded technology could qualify as an ATDS without the ability to generate telephone numbers.  *ACA Int'l v. FCC*, 885 F.3d 687, 702-03 (D.C. Cir. 2018) ("So which is it: does a device qualify as an ATDS only if can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? . . . It might be permissible for the Commission to adopt either interpretation.  But the Commission cannot, consistent with reasoned decisionmaking, espouse both competing interpretations in the same order."); *Pinkus*, 319 F.Supp.3d at 935 ("*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling insofar as they provide, as did the 2015 Declaratory Ruling, that a predictive dialer qualifies as an ATDS even if it does not have the capacity to generate phone numbers randomly or sequentially and then to dial them."); *Snow*, 2019 U.S. Dist. LEXIS 99760 at *14-*15 ("Although the Fourth Circuit has not addressed the impact of *ACA International* on prior FCC interpretations of the definition of ATDS, other circuits uniformly have held that *ACA International* set aside the FCC's interpretations of the definition of an ATDS, and that the court must return to interpreting the statutory definition of ATDS without that FCC guidance.").

(1) Written policy.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

…

(3) Recording, disclosure of do-not-call requests.  If a person or entity . . . receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls . . . must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  *This period may not exceed thirty days from the date of such request.*"

47 C.F.R. § 64.1200(d)(1) and (3) (emphasis added).  As discussed below, Plaintiff not only fails to allege a Section 64.1200(d) claim but confirms such a claim does not exist, warranting dismissal with prejudice.

> **1.** *Plaintiff Fails to Allege That He Received Calls as a "Residential Telephone Subscriber"*

Plaintiff has not alleged a claim under 47 C.F.R § 64.1200(d) because he failed to allege that he received calls as a "residential telephone subscriber."  Throughout his Complaint, Plaintiff alleges receiving calls on his "cellular phone."  *See* Compl., ¶¶ 24-29.  Plaintiff includes no factual allegations indicating that his cellular telephone qualifies as a residential line.  For that reason alone his claim must be dismissed.  *Cunningham v. Rapid Response Monitoring Servs.,*251 F.Supp.3d 1187, 1201 (M.D. Tenn. 2017*)* (claim premised on 47 CFR 64.1200 dismissed where plaintiff claimed a cellular phone number was at issue and pled no facts indicating the number was used for residential purposes); *Lee v. LoanDepot.com, LLC*, No. 14-CV-01084, 2016 U.S. Dist. LEXIS 110100, *18 (D. Kan. Aug. 17, 2016) ("To prevail under 47 C.F.R. § 64.1200(c)(2), Plaintiff must establish that his cellular number is used for residential purposes.").[4]

_____

[4] As one court explained, the private right of action is "limited to redress for violations of the regulations that concern residential telephone numbers."  *Cunningham v. Enagic USA Inc.*, No.

### 2.    *The Remaining Allegations Confirm Plaintiff Does Not Have a Claim*

Plaintiff's remaining allegations confirm he does not have a Section 64.1200(d) claim. Plaintiff claims that on May 3, 2016 he "explicitly told the caller to add him to their Do Not Call list." Compl., ¶ 28.  Plaintiff confirms he was "place[d] . . . on [Citrix's] Do Not Call list" and does not allege receiving calls thirty days after his request, warranting dismissal.  Compl., ¶ 31-32; *See* 47 C.F.R. § 64.1200(d)(3) ("Persons or entities making calls . . . must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request."); *Orsatti v. Quicken Loans, Inc.*, No. 15-cv-09380, 2016 U.S. Dist. LEXIS 182873, *19-*20 (C.D. Cal. Sept. 12, 2016) ("To the extent that the Plaintiff received other calls from the Defendant outside of the 30 day window, she has not alleged such calls in her Complaint.  Therefore, the Plaintiff fails to properly state a claim upon which relief can be granted under 47 C.F.R § 64.1200(d), and any claims based on that provision must be dismissed."); *Simmons v. Charter Communications, Inc.*, 222 F.Supp.3d 121, 140 (D. Conn. 2016) (granting summary judgement on a Section (d)(3) Do-Not-Call claim where the Defendant honored Plaintiff's Do-Not-Call request within 30 days.). Nor does Plaintiff allege requesting and failing to receive written policies.  47 C.F.R. § 64.1200(d)(1).  And the fact that he was placed on a do-not-call list and calls stopped precludes any claim that personnel were not trained.[5]

---

15-cv-0847, 2017 U.S. Dist. LEXIS 97486, *13 (M.D. Tenn. June 23, 2017) (dismissing claim premised on calls to cellular phone allegedly violating Section 64.1200(d)).

[5] Even assuming Plaintiff adequately alleged a Section 64.1200(d) claim – which he did not – Plaintiff has not alleged that all calls would even be actionable.  Section 64.1200(d) only regulates "call[s] for telemarketing purposes."  Plaintiff alleges calls on September 4 and 10, 2015, December 14, 2015, May 3, 2016, and May 25, 2016.  While Plaintiff includes rote allegations as to the first three alleged calls, Plaintiff alleges nothing regarding the purpose of the last two calls.  *Mejia v. Time Warner Cable, Inc.*, No. 15-cv-6445, 2017 U.S. Dist. LEXIS 120445, *31 (S.D.N.Y. Aug. 1, 2017) ("Plaintiffs have failed to carry their burden to show that

**D.      Plaintiff's Claim under the Maryland TCPA Falls with the TCPA Claims, is Partially Time-Barred, and Impermissibly Seeks Double Recovery**

Plaintiff includes a Maryland Telephone Consumer Protection Act claim in the Complaint, alleging "violations of . . . Md. Code Ann. Com. Law §§ 14-3201, *et seq.* . . . which prohibits a person from violating the TCPA."  Compl., ¶ 60.  The claim fails because: (i) it falls with Plaintiff's federal TCPA claims; (ii) is partially time-barred; and (iii) seeks double recovery.

### 1.      *Plaintiff's State Law Claim Falls with the TCPA Claim*

Plaintiff premises his state law claim on Section 14-3201.  Section 14-3201 states: "A person may not violate: . . . The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule . . . ."  Md. Code Ann. Com. Law § 14-3201(2).  Because this claim is derivative of Plaintiff's federal TCPA claims – which he cannot allege – the claim falls with the federal TCPA claims.

### 2.      *Plaintiff's State Law Claim is Partially Barred by the Statute of Limitations*

"The Maryland TCPA carries a three-year statute of limitations."  *Pasco v. Protus IP Solutions, Inc.*, 826 F.Supp.2d 825, 842-43 (D. Md. 2011); *see also AGV Sports Grp., Inc. v. Protus IP Solutions, Inc.*, 417 Md. 386 (2010).  In his state law claim, Plaintiff "incorporates the allegations from all previous paragraphs," in which Plaintiff alleged calls on September 4, 2015, September 10, 2015, and December 14, 2015.  Compl., ¶¶ 26, 27, and 59.  Plaintiff filed his Complaint on April 26, 2019, barring Plaintiff from pursuing a state law claim based on any calls before April 26, 2016.[6]

---

calls to *them* made by Time Warner were made for telemarketing purposes . . . . the complaint speaks about telemarketing only in general terms.").

[6] Additionally, because 47 C.F.R. § 64.1200(d) only regulates calls made "for telemarketing purposes," and Plaintiff alleges nothing about the purpose of calls made in 2016, Section

### 3. *Plaintiff Impermissibly Seeks Double Recovery*

Plaintiff's state law claim must also be dismissed because a plaintiff may not receive a "double recovery under different legal theories for the same injury." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 460 (4th Cir. 2011). The Court of Appeals of Maryland, explained that the "history of the MTCPA reflects that it was enacted 'merely to enable a private right of action under the TCPA.'" *AGV Sports Grp.*, 417 Md. at 390-91. Federal Courts and State Courts within Maryland agree that a plaintiff is not entitled to double recovery under the TCPA and the Maryland TCPA. *Pasco*, 826 F.Supp.2d at 846 ("In light of the Court of Special Appeals of Maryland's skepticism and concern regarding the availability of double damages under both the federal and state TCPAs, this Court concludes, at least preliminarily, that the Plaintiffs are likely not entitled to damages under both statutes."); *Powers v. Katz*, Case No. 258128-V, 2007 Md. Cir. Ct. LEXIS 33, at *1-2 (Mont. Cnty. Cir. Ct. Dec. 12, 2007) (ordering that no damages be awarded under the Maryland TCPA "in light of the Maryland Court of Special Appeals' 'serious doubts as to the availability of double damages for an identical violation' of both the TCPA and MTCPA" and indicating its concurrence with those doubts.).[7]

---

64.1200(d) cannot form the basis of a derivative state law claim (assuming Plaintiff's Section 64.1200(d) even survives).

[7] Additionally, Plaintiff purports to raise the Maryland state law claim on behalf of "members of the classes" without limitation. Compl., ¶ 61. As discussed below, the purported claims of out of state putative class members have no link to Maryland. Consequently, Plaintiff cannot maintain a Maryland state law claim on behalf of non-Maryland residents. *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.Supp.2d 502, 513 (D. Md. 2013) ("In a federal question [claim] that incorporates a state law issue, a district court applies the choice-of-law rules of the state in which it sits . . . . In tort cases, Maryland courts apply *lex loci delicti, i.e.,* the law of the 'place of the alleged harm.'"; internal quotations and citations omitted); *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F.Supp.3d 896, 905 (N.D. Cal. 2008) ("Plaintiffs may not bring California claims on behalf of non-California residents whose claims do not arise out of conduct that took place in California. Plaintiffs argue that all Plaintiffs' claims are based on conduct that took place in California but Plaintiffs have not alleged specific conduct that occurred in California.").

IV.    **THE CLASS DEFINITIONS MUST BE STRICKEN IF THIS CASE IS ALLOWED TO PROCEED**

In the event Plaintiff's Complaint is not dismissed outright and any portion is allowed to move forward, Citrix respectfully urges the Court to strike Plaintiff's nationwide class definitions or, alternatively, dismiss the claims to the extent they are purportedly brought on behalf of any non-Maryland residents.  The U.S. Supreme Court has confirmed that if Plaintiff is not proceeding under a theory of general jurisdiction – which he is not – Plaintiff can only pursue claims for which specific jurisdiction exists.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  Because specific jurisdiction does not exist with respect to purported claims of non-Maryland residents, Plaintiff cannot proceed with nationwide class definitions.

A.    *Bristol-Myers* **Requires an Occurrence in this Forum and Bars Plaintiff From Representing a Nationwide Class**

In *Bristol-Myers* over 600 plaintiffs, most of whom were not California residents, filed a mass tort products liability action in California state court against defendant Bristol-Myers Squibb Company, a company incorporated in Delaware and headquartered in New York.  *Bristol-Myers*, 137 S. Ct. at 1777.  Plaintiffs alleged various state-law claims premised on injuries allegedly caused by a drug called Plavix.  *Id.*  Though general jurisdiction "was clearly lacking," the California Court of Appeal found that California courts had specific jurisdiction over nonresidents' claims, which the California Supreme Court affirmed, applying a "'sliding scale approach to specific jurisdiction.'"  *Id.* at 1778.

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"  *Bristol-Myers*, 137 S. Ct. at 1781.  Describing the California Supreme Court's "sliding scale approach" as "resembl[ing] a loose and spurious form of general jurisdiction," the U.S. Supreme Court highlighted the California Supreme

Court's inability to "identify[] any adequate link between the State and the nonresidents' claims." *Id.* "What is needed – and what is missing here – is a connection between the forum and the specific claims at issue." *Id.* The U.S. Supreme Court reversed the California Supreme Court's judgment and remanded for further proceedings. *Id.* at 1784.

### B. *Bristol-Myers* Applies to Class Actions

Since *Bristol-Myers* was published, numerous courts have held that *Bristol-Myers* applies in the class action context. At best, it is "not clear" why the Supreme Court's holding in *Bristol-Myers* should not apply to a case "simply because [it] is a class action." *Practice Mgmt. Support Servs. v. Cirque Du Soleil, Inc.*, 301 F.Supp.3d 840, 861 (N.D. Ill. 2018). Rather, "[t]he Supreme Court held in *Bristol-Myers* that the Fourteenth Amendment's due process clause precludes nonresident plaintiffs injured outside the forum from aggregating their claims with an in-forum resident . . . . Under the Rules Enabling Act, a defendant's due process interest should be the same in the class context." *Id.* "Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; rather, the Court announced a general principle – that due process requires a connection between the forum and the specific claims at issue." *Chavez v. Church & Dwight Co.*, No. 17-C-1948, 2018 U.S. Dist. LEXIS 82642, *30 (N.D. Ill. May 16, 2018).

Assuming that a named plaintiff can establish personal jurisdiction, *Bristol-Myers* clarified that similarity of putative class members' claims is not sufficient. Instead, courts must be able to exercise general jurisdiction over a defendant or specific jurisdiction with respect to *each* putative class member's claims in order for a nationwide class action (like that alleged here) to proceed:

- *Leppert v. Champion Petfoods USA Inc.*, No. 18-CV-4347, 2019 U.S. Dist. LEXIS 7585, *15 (N.D. Ill. Jan. 16, 2019) ("The Court finds that *Bristol-Myers* applies here and dismisses Plaintiff Leppert's nonresident state-law claims brought individually and on behalf of the putative Ohio Class for lack of personal jurisdiction pursuant to Rule 12(b)(2).");

- *In re Dicamba Herbicides Litig.*, 359 F.Supp.3d 711, 724 (E.D. Mo. Feb. 6, 2019) ("Members of a nation-wide class action, aside from those class members from Missouri, do not have a connection between the forum and the specific claims at issue.  Thus this Court would not have personal jurisdiction over BASF with respect to those claims.");

- *Garvey v. Am. Bankers Ins. Co. of Fla.*, No. 17-CV-986, 2019 U.S. Dist. LEXIS 79753, *6 (N.D. Ill. May 10, 2019) ("Because the parties do not contend that the non-Illinois residents were injured in Illinois, exercising specific jurisdiction over defendants with respect to the nonresidents' claims would violate defendants' contacts with Illinois.  Accordingly, the Court must strike the class definition to the extent it asserts claims of non-residents.");

- *Bakov v. Consol. World Travel, Inc.*, No. 15-C-2980, 2019 U.S. Dist. LEXIS 46510, *40 (N.D. Ill. Mar. 21, 2019) ("[T]his Court has previously held that *Bristol-Myers Squibb's* jurisdictional rule applies in the class action context . . . . Therefore, the Court lacks personal jurisdiction to certify a nationwide class.");

- *Zuehlsdorf v. FCA US LLC*, No. 18-CV-1877, 2019 U.S. Dist. LEXIS 83169, *36-*37 (C.D. Cal. Apr. 30, 2019) ("Because Plaintiff has not met his burden of establishing that jurisdiction is proper as to the nonresidents' claims . . . the Court DISMISSES the class allegations as to the class members whose claims have no nexus with California.");

- *Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 U.S. Dist. LEXIS 147492, *18-*19 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers* in class action and barring claims of out-of-state plaintiffs);

- *In re Dental Supplies Antitrust Litig.*, No. 16-Civ-696, 2017 U.S. Dist. LEXIS 153265, *37 (E.D.N.Y. Sept. 20, 2017) (applying *Bristol-Myers* in class action and rejecting argument that opinion does not apply to class actions; "This argument is flawed.  The constitutional requirements of due process do not wax and wane when the complaint is individual or on behalf of a class.");

- *Gazzillo v. Ply Gem Indus.*, No. 1:17-CV-1077, 2018 U.S. Dist. LEXIS 180303, *19 (N.D.N.Y. Oct. 22, 2018) ("The Complaint contains neither (1) facts demonstrating Defendants' contacts with New York, nor (2) facts showing a connection between New York and the out-of-state Plaintiffs' claims . . . in light of *Bristol-Myers Squibb*, the Court does not have jurisdiction over the out-of-state Plaintiffs' claims.").[8]

---

[8] *See also Grossman v. Schell & Kampeter, Inc.*, No. 18-cv-02344, 2019 U.S. Dist. LEXIS 47407, *10-*11 (E.D. Cal. Mar. 21, 2019); *Leppert v. Champion Petfoods USA Inc.*, No. 18-C-4347, 2019 U.S. Dist. LEXIS 7585, *12 (N.D. Ill. Jan. 16, 2019); *Horowitz v. AT&T Inc.*, No. 17-cv-4827, 2018 U.S. Dist. LEXIS 69191, *44 (D.N.J. Apr. 25, 2018); *Levine Hat Co. v. Innate Intelligence, LLC*, No. 16-cv-01132, 2018 U.S. Dist. LEXIS 127738, *2-*3 (E.D. Mo. July 31, 2018); *DeBenardis v. NBTY, Inc.*, No. 17-C-6125, 2018 U.S. Dist. LEXIS 7947, *7 (N.D. Ill. Jan. 18, 2018); *Muir v. Nature's Bounty (De), Inc.*, No. 15-C-9835, 2018 U.S. Dist. LEXIS

### C.  *Bristol-Myers* Bars Plaintiff from Representing a Nationwide Class

The United States Constitution allows courts of any given state to assert personal jurisdiction over a defendant.  A Court located in a particular state may exercise "general" jurisdiction over a defendant if that defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  Where a defendant is not essentially at home in the forum state, a plaintiff invoking the court's jurisdiction must establish "specific" jurisdiction by showing "an affiliation between the forum and the underlying controversy."  *Id.*  Plaintiff cannot establish general jurisdiction or show that this Court has specific jurisdiction with respect to the claims of unnamed putative class members located outside the District of Maryland.

### 1.  *General Jurisdiction Does Not Exist Over Citrix*

General jurisdiction "is a fairly limited concept" and "[t]he Fourth Circuit has long held that 'broad constructions of general jurisdiction' are 'generally disfavored.'"  *Ultimate Outdoor Movies, LLC v. Funflicks, LLC*, No. SAG-18-2315, 2019 U.S. Dist. LEXIS 86763, *13 (D. Md. May 23, 2019); *Becker v. Noe*, No. ELH-18-00931, 2019 U.S. Dist. LEXIS 54743, *71 (D. Md. Mar. 27, 2019) (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly

---

128738, *6-*10 (N.D. Ill. Aug. 1, 2018); *America's Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16-C-9281, 2018 U.S. Dist. LEXIS 120590, *4-*11 (N.D. Ill. July 19, 2018); *Chavez v. Church & Dwight Co.*, No. 17-C-1948, 2018 U.S. Dist. LEXIS 82642, *26-*32 (N.D. Ill. May 16, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F.Supp.3d 870, 874 (N.D. Ill. 2017); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, *11 (N.D. Ill. Oct. 26, 2017); *Mussat v. IQVIA Inc.*, No. 17-C-8841, 2018 U.S. Dist. LEXIS 183549, *8-*15 (N.D. Ill. Oct. 26, 2018), *appeal docketed*, No. 19-1204 (7th Cir. Feb. 01, 2019).

regarded as at home." *Funflicks*, 2019 U.S. Dist. LEXIS 86763 at *14 (quoting *Goodyear*, 564

U.S. at 924). "In the context of a corporation, the paradigm bases for general jurisdiction are

'the place of incorporation and principal place of business.'" *Id.* (quoting *Daimler AG v.*

*Bauman*, 571 U.S. 117, 137 (2014)). "If the defendant's contacts with the forum state are

'continuous and systematic,' the district court has general jurisdiction over the nonforum

defendant." *AGV Sports Group, Inc.*, 2009 U.S. Dist. LEXIS 58264 at *5.

Plaintiff does not allege general jurisdiction. Instead, Plaintiff alleges that Citrix is

"organized in Delaware" and alleges Citrix has "its principal place of business in Florida."

Compl., ¶ 7. In other words, Citrix is *not* "at home" in Maryland and general jurisdiction does

not exist. Nor does Plaintiff attempt to allege general jurisdiction. *AGV Sports Group, Inc.*,

2009 U.S. Dist. LEXIS 58264 at *5-*6 ("Plaintiffs have not contended that this Court may

exercise personal jurisdiction over the Individual Protus Defendants on the basis of their

'continuous and systematic' contacts with Maryland.").

At best, Plaintiff alleges that Citrix "conducts business in this District, including through

the making of telemarketing calls." Compl., ¶ 9. Conclusory allegations do not establish general

jurisdiction. *See e.g. Coleman v. KIPP DC Supporting Corp.*, No. GJH-19-1840, 2019 U.S. Dist.

LEXIS 39437, *7-*8 (D. Md. Mar. 12, 2019) (concluding "there is no suggestion by Plaintiffs

here that Defendants engaged in continuous and systematic activities within Maryland" where

Plaintiffs "allege[d] in conclusory fashion that Defendants 'are doing business and have the

necessary minimum contacts within the state of Maryland'"); *KeraLink Int'l, Inc. v. Stradis*

*Healthcare, LLC*, No. CCB-18-2013, 2018 U.S. Dist. LEXIS 216383, *9-*10 (D. Md. Dec. 26,

2018) ("Kareway is neither incorporated nor headquartered in Maryland . . . . The mere sale of products within the forum state is insufficient" to establish general jurisdiction.).[9]

Because general jurisdiction does not exist, Plaintiff must rely on a theory of specific jurisdiction. Plaintiff cannot establish specific jurisdiction as to the alleged claims of putative class members with no link to the District of Maryland.

> ### 2.    *Specific Jurisdiction Does Not Exist as to the Claims of Nonresident Putative Class Members*

For specific jurisdiction to exist, "there must be an affiliation between the forum, and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 137 S. Ct. at 1781 (internal quotations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* "To assess specific jurisdiction, the Fourth Circuit considers: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Funflicks*, 2019 U.S. Dist. LEXIS 86763 at *14.

---

[9] *See also Cirque Du Soleil*, 301 F.Supp.3d at 864 (Northern District of Illinois lacked general jurisdiction over defendants incorporated in Quebec, Canada and Delaware); *Roy v. FedEx Ground Package Sys.*, 353 F.Supp.3d 43, 54 (D. Mass. 2018) ("Because FedEx Ground is a Delaware corporation with its principal place of business in Pennsylvania, there is no dispute that Massachusetts courts do not have general jurisdiction."); *Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 U.S. Dist. LEXIS 147492, *8 (N.D.N.Y. Sept. 12, 2017) ("Defendant is a Delaware limited liability company, and its principal place of business is in Michigan . . . Therefore, the Court cannot exercise general jurisdiction over Defendant under the theory that it is 'essentially at home' in New York . . . ."); *IQVIA*, 2018 U.S. Dist. LEXIS 183549 at *11 ("[T]his Court does not have general jurisdiction over IQVIA because it is a Delaware corporation and its principal place of business is in Pennsylvania."); *Grossman*, 2019 U.S. Dist. LEXIS 47407, *6-*7 ("Diamond is incorporated and headquartered in Missouri . . . Diamond is therefore not 'at home' in California.").

Relying on Plaintiff's link to the District of Maryland, Plaintiff purports to not only represent residents of the District of Maryland but to also represent putative class members whose claims *have no link to this District*. *Bristol-Myers* and subsequent cases addressing class actions confirm that if Plaintiff's case is allowed to go forward, Plaintiff's class definition(s) must be stricken and limited to a class(es) of District of Maryland residents whose claims may have an actual nexus with this District. Non-resident putative class members cannot establish a link to this District and the Court lacks specific jurisdiction over any of their alleged claims. Like the nonresident plaintiffs in *Bristol-Myers*, putative class members "are not [Maryland] residents and do not claim to have suffered harm in th[e] State. In addition, . . . all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the [Maryland] courts cannot claim specific jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1782.[10]

And under the Fourth Circuit's test for specific jurisdiction, Citrix cannot be said to have purposefully availed itself of the privilege of conducting activities in Maryland by allegedly contacting individuals who had nothing to do with Maryland. Nor would their claims arise out of alleged activities directed at Maryland. Moreover, exercising personal jurisdiction is at odds

---

[10] *See also Cirque Du Soleil*, 301 F.Supp.3d at 864 ("[U]nder *Bristol-Myers*, the mere fact that Practice Management received a fax in Illinois does not allow for an exercise of specific jurisdiction over the nonresidents' claims with respect to faxes received outside of Illinois . . . .") (internal quotations and brackets omitted); *Champion Petfoods*, 2019 U.S. Dist. LEXIS 7585 at *13 ("Plaintiffs fail to identify any link between Illinois and the specific nonresident claims that due process requires . . . that the nonresident claims are based on the same product and marketing as the resident claims is insufficient."); *FCA*, 2017 U.S. Dist. LEXIS 147492 at *19-*20 ("[T]he out-of-state Plaintiffs have shown no connection between their claims and Chrysler's contacts with New York. Therefore, the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims."); *Nature's Bounty*, 2018 U.S. Dist. LEXIS 128738 at *14 (dismissing non-Illinois Plaintiffs' claims because they "do not arise from or relate to Defendants' contacts with Illinois"); *Promologics*, 2018 U.S. Dist. LEXIS 120590 at *4-*10 ("In this class action, the *Bristol Myers* opinion is applicable and its import clear: The Court lacks jurisdiction over the Defendants as to the claims of the nonresident, proposed class members.").

with the constitutional concerns raised by the Supreme Court in *Bristol-Myers*.  *Bristol-Myers*,

137 S. Ct. at 1780-81 ("[T]he 'primary concern' is the burden on the defendant [and]

encompasses the more abstract matter of submitting to the coercive power of a State that may

have little legitimate interest in the claims in question . . . . the Due Process Clause, acting as an

instrument of interstate federalism, may sometimes act to divest the State of its power to render a

valid judgment.") (internal quotations omitted); *Chavez*, 2018 U.S. Dist. LEXIS 82642 at \*30

("Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions; rather,

the Court announced a general principle – that due process requires a connection between the

forum and the specific claims at issue."); *NBTY, Inc.*, 2018 U.S. Dist. LEXIS 7947 at \*6 ("The

Court believes that it is more likely than not based on the Supreme Court's comments about

federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions . . .

where there is no general jurisdiction over the Defendants."); *IQVIA*, 2018 U.S. Dist. LEXIS

183549 at \*12 ("[E]xcersising specific jurisdiction over IQVIA with respect to the nonresidents'

claims would violate IQVIA's due process rights.  Therefore, the Court must strike the class

definition to the extent it asserts claims of nonresidents.").

## V.   <u>CONCLUSION</u>

Citrix respectfully urges the Court to dismiss Plaintiff's Complaint with prejudice.

Plaintiff's first TCPA claim fails to adequately allege use of an ATDS, and Plaintiff cannot

allege use of technology that *generates* telephone numbers.  Plaintiff fails to allege that his

cellular telephone number qualifies as a "residential" telephone number and consequently fails to

state a Section 64.1200(d) claim; his remaining allegations, moreover, confirm a Section

64.1200(d) claim does not exist.  Plaintiff's state law claim, which is derivative of the TCPA

claims, falls with the TCPA claims; additionally, the state law claim is partially time-barred,

Plaintiff cannot seek to increase statutory damages by tacking on the claim, and Plaintiff cannot

purport to bring the claim on behalf of non-Maryland residents.  In the event the case is not

dismissed with prejudice, Citrix respectfully requests that the Court strike Plaintiff's nationwide

class definitions pursuant to *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).


Dated: July 8, 2019

Respectfully submitted,

By: /s/ *David Barmak*
     David Barmak (MD Bar No.: 06816)
     dbarmak@mintz.com
     MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
     701 Pennsylvania Avenue NW Suite 900
     Washington DC, 20004
     Telephone: (202) 434-7300

     Joshua Briones (CA SBN 205293)
     jbriones@mintz.com
     (*admitted pro hac vice*)
     Esteban Morales (CA SBN: 273948)
     emorales@mintz.com
     (*admitted pro hac vice*)
     Matthew Novian (CA SBN: 324144)
     mjnovian@mintz.com
     MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
     2029 Century Park East Suite 3100
     Los Angeles, CA 90067
     Telephone:  (310) 586-3200

     *Attorneys for Defendant, Citrix Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, a true and correct copy of Defendant Citrix Systems, Inc.'s Memorandum of Points and Authorities in Support of its Motion to Dismiss and to Strike was filed by the Court's Electronic Case Filing System, and thereby served on all parties of record registered with the Electronic Case Filing System.

/s/ *David Barmak*
David Barmak

89029766v.3