# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAN L. BOGER, on behalf of himself and others similarly situated, | * |
| | * |
| Plaintiff, | * |
| v. | Civil Action No. 8:19-cv-01234-PX |
| | * |
| CITRIX SYSTEMS, INC., | * |
| Defendant. | |

\*\*\*

## **MEMORANDUM OPINION**

Pending before the Court is Defendant Citrix Systems, Inc.'s ("Citrix") combined motion to dismiss and motion to strike (ECF No. 14-1). The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants in part and denies in part Citrix's motion.

### I.    Background

Citrix is a software company that sells products aimed at increasing workplace productivity. ECF No. 1 ¶ 18. Citrix uses telemarketing to generate sales. *Id.* ¶ 19.

Plaintiff Dan Boger received automated telemarketing calls from Citrix on three separate occasions during September and December 2015. *Id.* ¶¶ 25–27. On each call, a Citrix employee spoke with Boger and promoted Citrix products and services. *Id.* ¶¶ 26–27.

Boger received two more automated telemarketing calls from Citrix during May 2016. *Id.* ¶¶ 28–29. On the May 3, 2016 call, Boger told the Citrix caller specifically to add him to Citrix's "Do Not Call" list. *Id.* ¶ 28. He then asked to speak with a manager and was connected to Citrix employee, Trevor Jones. *Id.* Boger asked why he continued to receive calls from Citrix despite his previous requests for Citrix to stop calling him. *Id.* Jones responded that Boger may

have previously talked with someone from a different Citrix team. *Id.*

On May 25, 2016, Boger received another call from Citrix. *Id.* ¶ 29. Again, he told the Citrix caller that he had repeatedly requested for Citrix to stop calling him and asked to speak with a manager. *Id.* ¶ 30. This time, Boger spoke with sales team manager, Sam Schlunz, who told Boger that Citrix has multiple Do Not Call lists and that Boger would be added to the list. *Id.* ¶ 31.

On June 16, 2016, Boger sent correspondence to Citrix, reaffirming that he did not wish to be contacted by the company. *Id.* ¶ 32. In the correspondence, Boger listed the calls he had received from Citrix, and requested that if Citrix believed Boger had agreed to be contacted, Citrix provide him proof of such assent. *Id.* ¶¶ 32–33. Brian Benfer, Senior Manager at Citrix, responded to Boger via email, confirming not only that Citrix had called Boger on the listed dates, but also that Citrix knew Boger had requested twice, prior to his May 25, 2016 request, to be added to Citrix's Do Not Call list. *Id.* ¶ 33. The correspondence further confirmed that Citrix had still not added Boger's number to Citrix's Do Not Call list. *Id.*

Boger describes that for each call, before a human representative came on the line, he heard a distinct pause. *Id.* 1 ¶ 34. He believes the pause is evidence that Citrix used an automatic telephone dialing system ("ATDS"). *Id.* Boger shared this belief with Citrix in the June 26 correspondence. *Id.* In response, Benfer noted that the Telephone Consumer Protection Act ("TCPA") prohibits the use of ATDS, that Citrix did not intend to call cellular phones, and that "it's not clear right now how a cell phone got through." *Id.*

On April 26, 2019, Boger filed suit on behalf of himself and others similarly situated, alleging that Citrix violated the TCPA's provisions prohibiting autodialer calls to cell phones (Count I); the TCPA's Do Not Call provisions (Count II); and the Maryland Telephone

2

Consumer Protection Act ("MTCPA") (Count III). ECF No. 1. In response, Citrix moved to dismiss for failure to state a claim and lack of personal jurisdiction and to strike Boger's nationwide class definitions. ECF No. 14-1.

## II. Motion to Dismiss – Failure to State a Claim

### A. Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, the well-pleaded allegations are accepted as true and viewed in the light most favorable to the party asserting the claim. *Twombly*, 550 U.S. at 555. However, "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

3

## B. Count I – Use of Prohibited Automatic Telephone Dialing System (ADTS)

"Congress enacted the [TCPA] to prevent abusive telephone marketing practices." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 648 (2019); *see* 47 U.S.C. § 227.[1] To accomplish this, the TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A). Under the TCPA, an ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Citrix argues that Boger has failed to allege use of an ATDS. More particularly, Citrix contends that the Complaint has "not alleged facts confirming the phone calls were made with equipment that '*us[ed] a random or sequential number generator*'" such that it could be considered an ATDS. *See* ECF No. 14-1 at 5 (quoting *Snow v. General Elec. Co.*, No. 5:18-CV-511-FL, 2019 WL 2500407, at *18 (E.D.N.C. 2019)) (emphasis in original). In response, Boger argues that the Complaint is sufficient because an ATDS is properly understood to apply to any system "that *either* store[s] *or* produce[s] telephone numbers to be called[,]" which covers systems that automatically dial telephone numbers, or have the present but latent capacity to generate telephone numbers. ECF No. 17 at 6, 6 n.1, 17.

The United States Court of Appeals for the Fourth Circuit has not yet defined what constitutes an ATDS, and other circuits do not speak with one voice. Some have taken a more restrictive approach, holding that unless the plaintiff demonstrates that defendant employs a

---

[1] The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the [TCPA] regulations." 47 U.S.C. § 227(c)(5).

4

random or sequential number generator, then the defendant has not used an ATDS, and liability under the TCPA does not attach. *See, e.g.*, *Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, 2020 WL 808270, at *1 (7th Cir. 2020) (holding AT&T's system exclusively dialed numbers stored in a customer database, did not store or produce numbers using a random or sequential number generator, and therefore was not an ATDS under the statute); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306–07 (11th Cir. 2020) (interpreting the clause "using a random sequential number generator" to modify both "store" and "produce" in the statutory definition of ATDS).

Other circuits focus on whether the equipment "could" randomly or sequentially dial such numbers. *See, e.g., Gary v. TrueBlue, Inc.*, 786 F. App'x 555, 557–58 (6th Cir. 2019) (affirming a grant of summary judgment in favor of defendant finding "no evidence that TrueBlue's system *could* randomly or sequentially text phone numbers") (emphasis added); *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming a grant of summary judgment in favor of Defendant because the record showed that plaintiff could not establish that an "Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers…" and instead "sent messages only to numbers that had been individually and manually inputted into its system by a user."). Accordingly, where a calling system could function as an ATDS, the claim survives challenge.

Still other circuits have held that an "ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018). *See also Breda v. Cellco Partnership*, 934 F.3d 1, 13 n.3 (1st

5

Cir. 2019) (noting that the definition of ATDS is subject to ongoing debate and, while not a contested issue on appeal, "it suffices for present purposes to think of an automatic dialing system as a piece of equipment exhibiting 'the capacity to dial numbers *without human intervention*'" (quoting *Maes v. Charter Commc'n*, 345 F. Supp. 3d 1067, 1067 (W.D. Wis. 2018)) (emphasis added).

At the pleading stage, this Court need not join this debate because Boger has plausibly alleged a claim with sufficient specificity to survive challenge even under the most restrictive statutory interpretation. The Complaint avers the use of an ATDS.[2] *See* ECF No. 1 ¶ 20 ("One of the telemarketing strategies used by Citrix involves the use of an [ATDS] to solicit customers through the use of a predictive dialer"); ¶ 21 ("Citrix engages in use of this equipment because it allows for thousands of automated calls to be placed at one time"); ¶ 25 ("Mr. Boger received five automated calls from Citrix"). The Complaint more specifically avers that when Boger accused Citrix of using an ATDS, its representatives did not deny it. ECF No. 1 ¶ 34. Benfer indicated that he did not know how the call to a cell phone number "got through," *id.*, which, construed most favorably to Boger, suggests that Citrix knew the restrictions imposed under the TCPA, knew the dialing system constituted an ATDS, and plausibly used (or misused) an ATDS in some fashion such that Benfer could not explain how it managed to dial a cell phone number.

Additionally, the Complaint avers that Boger noticed "a distinctive pause before sales representatives came onto the line that was indicative of the use of a predictive dialer." *Id.* That

---

[2] Citrix argues that Boger "does not allege facts confirming the phone calls were made with equipment that '*us[ed] a random or sequential number generator*.'" ECF No. 14-1 at 5 (quoting *Snow*, 2019 WL 2500407, at *18) (emphasis in original). However, Citrix attempts to hold this Court to a stricter standard than the *Snow* court required at the motion to dismiss stage. In *Snow*, this Court held that "[c]ritically missing from the complaint are any facts permitting *an inference* that . . . [calls] plaintiff received were sent using equipment that stores or produces numbers to be called 'using a random or sequential number generator.'" *Snow*, 2019 WL 2500407, at *18 (quoting 47 U.S.C. § 227(a)(1)) (first emphasis added). The Complaint here, in comparison, permits such an inference.

the caller heard a "pause" at the beginning of the call allows the plausible inference that Citrix used an ATDS. *See, e.g., Oliver v. DirecTV, LLC*, No. 14-CV-7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015) ("[Plaintiff's] allegation regarding the "momentary pause," along with his other allegations regarding Defendant's phone calls, are sufficient to draw a reasonable inference that Defendant used an ATDS . . .").

The Court recognizes that some predictive dialers do not, in the end, qualify as an ATDS. *See ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018). However, information regarding the specific features of Citrix's dialer system remains within the exclusive province of the defendant and are thus best left for exploration in discovery. *See Whitehead v. Ocwen Loan Servicing, LLC,* No. 218CV470FTM99MRM, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018) ("There is no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls at issue in this case short of Plaintiff learning that information in discovery."); *see also Zeidel v. Nat'l Gas & Elec., LLC,* No. 18 CV 06792, 2019 WL 2161546, at *4 (N.D. Ill. May 17, 2019) ("Moreover, the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call. Such a determination requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff lacks prior to discovery."); *Battaglia v. Quicken Loans, Inc.,* No. 18-CV-1104, 2019 WL 430042, at *2 (W.D.N.Y. Feb. 4, 2019) ("'[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used' . . . such a standard would make callers 'virtually immune to TCPA claims.'") (quoting *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012)). Because the Complaint avers facts that "permit the court to infer more than the mere possibility of conduct,"

the claim will proceed. *See Iqbal*, 556 U.S. at 679. The motion to dismiss is denied as to count one.

### C. Count II –TCPA "Do Not Call" Claim

Relevant to this count, the TCPA implementing regulations prohibit sellers from initiating telemarketing calls unless the seller has established internal procedures for maintaining a "Do Not Call" list. 47 C.F.R. § 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. § 64.1200(d)(1)-(6).

Citrix levels three separate arguments for dismissing count two. First, Citrix maintains that because the Complaint does not allege Boger had received calls as a "residential telephone subscriber," as required by 47 C.F.R. § 64.1200(d), the claim must fail. ECF No. 14-1 at 8. The Court disagrees.

47 C.F.R. § 64.1200(d) states: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." Although 47 C.F.R. § 64.1200(d) refers to a "residential telephone subscriber," section 64.1200(e) expressly makes those regulations "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers …." *See also In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 167 (F.C.C. June 26, 2003) ("[W]e conclude that these rules apply to calls made to wireless telephone numbers . . . wireless subscribers should be afforded the same protections as wireline subscribers."). Viewed in the

light most favorable to plaintiff, the Complaint alleges a violation not only of 47 C.F.R. § 64.1200(d), but also of 47 C.F.R. § 64.1200(e).

Further, the Complaint does not foreclose that Boger's cellphone functioned as a residential telephone number for purposes of the statute. Although Citrix's argument may be of merit in the end, resolution is premature. Discovery will proceed as to the circumstances surrounding Boger's cell phone use. *Cf. Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-2472, 2020 WL 556405, at *6 (W.D. Tenn. Feb. 4, 2020) (deciding case on summary judgment). *See also Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) (reasoning that TCPA regulations will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers," because "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service.") (quoting *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at ¶¶ 35–36).

Citrix next argues that because the Complaint does not allege Boger had received a call within thirty days of being asked to be placed on a "Do Not Call" list, the claim fails. ECF No. 14-1 at 9. 47 C.F.R. § 64.1200(d)(3) states in relevant part:

> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

Specifically, Citrix argues that Boger made his first request on May 3, 2016, and that the next and last call from Citrix was on May 25, 2016—within thirty days of the May 3rd request.

9

ECF No. 14-1 at 9.  Citrix's argument is flawed.  Viewing the Complaint allegations most favorably to Boger, he had first told Citrix prior to May 3, 2016 to put him on the Do Not Call list.  *See* ECF No. 1 ¶ 30 ("On the May 25, 2016 call, Mr. Boger told the caller that he had *previously and repeatedly* requested to be placed on Citrix's Do Not Call list . . .") (emphasis added); ECF No. 1 ¶ 33 ("[The Senior Manager at Citrix] further confirmed that while Citrix's notes in its database stated that Plaintiff had *requested twice* to be added to Citrix's Do Not Call list prior to his request on May 25, 2016, his number had not been added to Citrix's Do Not Call list.") (emphasis added).  The Complaint thus avers that Boger made the prior request on either September 4, September 10, or December 14, 2015, during Citrix's initial calls, all of which are outside the 30-day timeframe.  ECF No. 1 ¶¶ 26–27.

However, even if Boger had first requested placement on the Do-Not-Call list on May 3, 2016, and Citrix waited until May 25, 2016 to honor the request, the count still survives dismissal.  On its face, 47 C.F.R. § 64.1200(d)(3) states that entities, such as Citrix, "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made," and further provides that the "reasonable time frame" may not exceed thirty days "from the date of such request."  The provision does not, as Citrix suggests, create a safe harbor for follow up calls placed within thirty days after the first call.  More to the point, whether Citrix put Boger on the Do-Not-Call list within a "reasonable time" is a question of fact best left for development in discovery.  *See Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (denying motion to dismiss, asserting that the whether a reasonable time had passed could only be decided "after the facts have been pinned down through discovery.").

10

Citrix lastly argues that count two fails because section 64.1200(d) only regulates "call[s] for telemarketing purposes" and Boger does not allege the purpose of the last two calls. ECF No. 14-1 at 9 n.5. The Court cannot take this argument seriously. The Complaint makes clear that Citrix used *telemarking* to generate sales; that Boger was the target of such telemarketing; and that each call arose from Citrix' telemarketing efforts. *See, e.g.,* ECF No. 1 ¶¶ 19, 25, 26, 27. Viewing the Complaint allegations as true and most favorably to Boger, count two survives dismissal.

### D. Count III – Violation of the Maryland Telephone Consumer Protection Act

The Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, et seq., ("Maryland TCPA") prohibits violations of the TCPA. Citrix argues that count three must be dismissed because Boger impermissibly seeks double recovery under different legal theories for the same injury. ECF No. 14-1 at 11.[3] Again, the Court disagrees.

As the Maryland Court of Special Appeals has noted, the MTCPA is "similar, but distinct" as compared to the TCPA. *Worsham v. Fairfield Resorts, Inc.*, 188 Md. App. 42, 57 (Md. Ct. Spec. App. 2009). Differences include the provision of possible attorney's fees under the Maryland TCPA, unlike under the TCPA, *compare* Md. Code Ann., Com. Law § 14-3202(b)(1) *with* 47 U.S.C. § 227(b)(3), and the applicable statute of limitations. *Fairfield Resorts*, 188 Md. App. at 43. More to the point, even if Boger cannot double-recover, as Citrix suggests, questions of recovery are far too premature to determine without any finding on liability. The Court will not dismiss the MTCPA claims at this juncture. *Cf. Boger v. Trinity Heating & Air, Inc.*, No. TDC-17-1729, 2018 WL 1851146, at *3 (D. Md. Apr. 18, 2018) (rejecting argument that Maryland TCPA was merely duplicative of the TCPA).

---

[3] Citrix also argues that count three fails entirely as it falls with Boger's federal TCPA claims. ECF No. 14-1 at 10. The Court rejects this argument because Boger's federal TCPA claims survive, as explained throughout this opinion.

Citrix next argues, alternatively, that Boger's MTCPA claim falls outside the statute's three-year limitation period. *See Fairfield Resorts*, 188 Md. App. at 43; *see also Pasco v. Protus IP Sols., Inc.*, 826 F. Supp. 2d 825, 842 (D. Md. 2011). The Complaint in this case was filed on April 26, 2019. ECF No. 1. To the extent Boger intends to pursue claims for calls placed before April 26, 2016, the MTCA count fails as to those calls.

### III. Class-Wide Claims

The Court next turns to Citrix's challenges as applied to the class-wide claims. Citrix moves to strike the Complaint's nationwide class definitions, or in the alternative, to dismiss the claims to the extent they are brought on behalf of any non-Maryland residents. ECF No. 14-1 at 12. As grounds for support, Citrix argues that the Court lacks personal jurisdiction over the claims of non-Maryland class members. For the following reasons, the Court disagrees that dismissal is warranted.

#### A. Standard of Review

The motion to dismiss putative nonresident class members for lack of personal jurisdiction is evaluated under Federal Rule of Civil Procedure 12(b)(2). "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a *prima facie* showing in support of its assertion of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In conducting its analysis, "the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation omitted).

Regarding the motion to strike, Federal Rule of Civil Procedure 12(f) allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Importantly, "Rule 12(f) motions are generally

viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation omitted).

### B. Analysis

Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Because Maryland courts have consistently held that Maryland's long-arm is co-extensive with the limits of personal jurisdiction permitted by the Constitution, *see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003), the only question the Court must consider is whether the exercise of jurisdiction over Citrix would be consistent with due process. *Id.*

Under the Due Process Clause, two types of personal jurisdiction must be considered: "specific jurisdiction" and "general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). Citrix is not subject to general jurisdiction in Maryland, as it is a Delaware corporation with its principal place of business in Florida. ECF No. 1 ¶ 7; ECF No. 14-1 at 3 n.2. *Daimler*, 571 U.S. at 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotation marks and alterations omitted). Thus, the remaining question is whether specific jurisdiction exists.

Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). To be subject to specific jurisdiction

in this forum, the "defendant must have purposefully established minimum contacts in the forum State such that it should reasonably anticipate being haled into court there." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (internal quotation marks and alterations omitted). In making this determination, "a court must weigh the totality of the facts before it." *Id.* (citation and internal quotation marks omitted).

Citrix rests its jurisdictional argument entirely on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). In *Bristol-Meyers Squibb*, individual plaintiffs filed a mass tort action in a California state court for injuries allegedly caused by the drug, Plavix. 137 S. Ct. at 1777. Bristol-Myers Squibb argued that the court lacked personal jurisdiction as to claims involving non-resident plaintiffs who also were not injured in California. *Id.* at 1778. Applying "settled principles of personal jurisdiction," the United States Supreme Court held that the state court lacked jurisdiction over Bristol-Meyers Squibb as to non-resident plaintiffs' claims. *Id.* at 1781, 1783.

Citrix now urges the Court to extend *Bristol-Myers Squibb* to a federal class action brought pursuant to Federal Rule of Civil Procedure 23 and to thus strike all class claims for lack of personal jurisdiction. The Court is not persuaded that *Bristol-Myers Squibb* should reach so far.

The Court begins by recognizing that each party in the *Bristol-Myers Squibb* mass action was a real party in interest. By contrast, in a class action, the only real party in interest is the named plaintiff, who in turn represents the interests of a putative class. *See Molock v. Whole Foods Market*, 297 F. Supp 3d 114, 126 (D.D.C. 2018); *see generally* Fed. R. Civ. P. 23(a).

14

This distinction is critical. Whereas a mass action involves the aggregation of independent cases with independent plaintiffs whose issues are joined for trial, a class action allows for claims to proceed on a class wide basis only after several threshold procedural requirements have been met. *See* Fed. R. Civ. P. 23(a)–(c). If a class is certified, then, and only then, does the named plaintiff "represent" the interests of the class. Even then, class certification does not change the fact that the unnamed class members are not "parties" to the suit in the same sense as named, individual plaintiffs whose cases are joined in a mass action.

Citrix argues that the due process concerns underlying the Supreme Court's decision in *Bristol-Myers Squibb* exist for both named and unnamed class members. *See* ECF No. 14-1 at 13, 19. The *Bristol-Myers Squibb* Court did indeed ground its decision in due process considerations. *See generally Bristol-Myers*, 137 S.Ct. at 1779, 1783. In particular, the Court emphasized that of "primary concern" was the burden placed on the defendant. *Id.* at 1780. However, Citrix, and the cases it cites, fail to acknowledge that the federal class action procedural framework supplies defendants due process protections—namely, the Rule 23 requirements—not applicable in mass actions. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2017 WL 5971622, at *14 (E.D. La. Nov. 30, 2017) ("Class actions. . . are different from mass torts. . . for a case to qualify for class action treatment, it needs to meet the additional due process standards for class certification under Rule 23—numerosity, commonality, typicality, adequacy of representation, predominance and superiority."); *Molock*, 297 F. Supp. 3d at 126–27 (same). *See also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ("The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

15

Unlike the mass action in *Bristol-Myers Squibb*, which "would likely [] present significant variations in the plaintiffs' claims, the requirements of Rule 23 class certification ensure that the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense." *Sanchez v. Launch Tech. Workforce Sols.*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018).[4] In apparent recognition of these differences, the *Bristol-Myers Squibb* Court cautioned against extending its decision too far. *See Bristol-Myers Squibb*, 137 S. Ct. at 1784 (explicitly reserving for later "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."); *id.* at 1789 n.4 (Sotomayor, J., dissenting) (underscoring that the Court did not "confront the question whether its opinion would also apply to a class action . . ."). *See also Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819 (N.D. Ill. 2018) (noting that the Supreme Court's characterization of its holding as a "straightforward application . . . of settled principles of personal jurisdiction," is "hard to square with the extraordinary sea change in class action practice that [defendant's] reading of *Bristol-Myers* would prompt. . . [h]ad the Supreme Court truly sought to bar certification of nationwide or multistate *class* actions on due process grounds in all but the one or two States where the defendant is subject to general jurisdiction, it implausible that it would have done so obliquely, in a *mass* action.") (emphasis in original).

This Court, therefore, joins the majority of other Courts declining to extend *Bristol-Myers Squibb* to federal class actions.[5] *See, e.g., In re Chinese–Manufactured Drywall*, 2017 WL

---

[4] Additional protections inure to the defendant in that class actions provide both issue and claim preclusion. *See Cooper v. Federal Reserve*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation . . . [b]asic principles of res judicata . . . apply") (internal citations omitted).

[5] A "significant supermajority of cases—fifty of the sixty-four rulings on the issue from June 2017 through September 2019, and four out of every five judges—have rejected the argument that *Bristol-Myers Squibb* constrains courts' jurisdiction over defendants with respect to unnamed class members." Daniel Wilf-Townsend, *Did Bristol-Myers Squibb Kill the Nationwide Class Action?*, 129 YALE L.J. 205, 205 (2019). Of the fourteen cases extended the decision to class actions, eleven arise in one district. *Id.* at 213.

5971622, at *14; *Molock*, 297 F.Supp.3d at 127; *Hicks v. Houston Baptist Univ.*, No. 5:17-CV-629-FL, 2019 WL 96219, at *6 (E.D.N.C. Jan. 3, 2019); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d at 822; *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342, 1345 (S.D. Fla. 2018); *Sotomayor v. Bank of Am., N.A.*, 377 F. Supp. 3d 1034, 1037 (C.D. Cal. 2019); *Chernus v. Logitech, Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018) (collecting cases). *But see Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018); *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018). For these reasons, the Court declines to extend *Bristol-Myers Squibb* to this case. Citrix's motions to strike and to dismiss class allegations are denied.

## IV. Conclusion

For the foregoing reasons, Citrix's motion to dismiss and to strike (ECF No. 14-1) is granted in part and denied in part. A separate Order follows.

| 3/3/2020 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |