## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAN L. BOGER, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>CITRIX SYSTEMS, INC.,<br><br>        Defendant. | CIVIL CLASS ACTION<br><br>NO. 8:19-cv-01234<br><br>Judge Griggsby |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiff Dan L. Boger ("Plaintiff") and Defendant Citrix Systems, Inc. ("Citrix" or "Defendant") (Plaintiff and Defendant are collectively referred to as the "Parties") have reached a class action settlement of this matter.[1]  The Settlement includes the establishment of a $2,750,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who submit a valid claim, after payment of notice and administration costs (if approved), Plaintiff's counsel fees and costs (if approved), and a Service Payment to the Plaintiff (if approved).[2]  There is no reverter in the Settlement Fund.  Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained by Plaintiff in formal and informal discovery and a website containing the Class Notice and through which Claim Forms may be obtained or directly submitted.

---

[1] Defendant does not oppose this Motion insofar as it supports the proposed Settlement.  Defendant does not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit A.

The Settlement was reached by counsel with a keen understanding of the merits of the claims and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The Parties negotiated the Settlement with the assistance of a highly skilled and experienced mediator and exchanged detailed mediation statements.  The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation.  Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan and Notice; and (6) schedule the Final Approval Hearing and related dates as proposed.  A proposed Preliminary Approval Order is attached as Exhibit B and has been lodged with the Court.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating a telephone call using an automated dialing system to telephone numbers assigned to a cellular telephone service, making any call for telemarketing purposes to any residential subscriber on the National Do Not Call Registry, and making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity.  *See* 47 U.S.C. § 227(b)(1), (c).[3]  Plaintiff is an individual residing in Maryland who received five solicitation calls from Defendant to his cellular telephone number, despite previously placing his number on the National Do Not Call Registry.

---

[3] Plaintiff also alleged a claim under the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq*.

On April 26, 2019, Plaintiff filed a putative class action complaint against Citrix in the United States District Court for the District of Maryland, captioned *Boger v. Citrix Systems, Inc.*, No. 8:19-cv-01234 (the "Action"), alleging, among other things, that Defendant violated the TCPA by, *inter alia*, placing unsolicited telemarketing calls to Plaintiff and members of the putative class on residential and cellular telephone numbers.  After engaging in informal discovery, the Parties participated in a mediation on April 26, 2022, with Judge Jay Gandhi (Ret.) from JAMS, during which the Parties discussed the potential settlement of the Action.  Although the Parties did not reach a settlement at the mediation, a potential resolution was reached after engaging in further discovery for several months.  On or about November 17, 2022, the Parties tentatively agreed to a potential settlement of the Action, the key terms of which are memorialized in the Agreement attached as Exhibit A.

Plaintiff believes that the claims asserted in the Action have merit.  (Declaration of Jonathan P. Misny ("Misny Decl."), attached hereto as Exhibit C, at ¶ 4.)  Nonetheless, Plaintiff and Class Counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action through class certification, trial, and any subsequent appeals.  (*Id.*)  Plaintiff's counsel has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk of a change in the law.  (*Id.*)

And, in the context of the TCPA, the risk of an unfavorable change in the law that could entirely defeat class members' claims is not merely hypothetical.  At present, there is ongoing district court scrutiny regarding the constitutionality of the TCPA in light of the Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020).  *See Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021)

(finding that under the Supreme Court's ruling in *Facebook*, to be an autodialer, a system must randomly or sequentially generate the telephone numbers to be called); *Creasy v. Charter Communs., Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr* are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*); *United Resource Systems, Inc. v. The State of South Carolina, by and through Alan Wilson, in his official capacity as Attorney General of South Carolina*, No. 3:21-cv-00364-JFA (D.S.C.) (seeking declaratory and injunctive relief and arguing that the Anti-Spoofing Provision is in conflict with, and therefore preempted by, the federal Truth in Caller ID Act of 2009, Public Law 111-331, 47 U.S.C. § 227(e), and that the Anti-Spoofing Provision is unconstitutional).

Furthermore, there is even more scrutiny being applied to what constitutes an autodialer in light of the Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), resulting in many TCPA cases that allege the use of an autodialer, like this one, to be dismissed at the pleading stage or shortly thereafter.  *See, e.g., Laccinole v. Rausch, Sturm, Israel, Enerson & Hornik LLP*, No. 1:20-CV-00312-MSM-LDA, 2022 U.S. Dist. LEXIS 208301, at *9 (D.R.I. Nov. 15, 2022); *LaGuardia v. Designer Brands Inc.,* No. 2:20-cv-2311, 2021 U.S. Dist. LEXIS 170704, at *22 (S.D. Ohio Sep. 9, 2021).

Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class, whereas continued and protracted litigation, even if successful, may have ultimately delivered none.  (Misny Decl. at ¶ 5.)  Therefore, Plaintiff and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. (*Id*.)  Based on their evaluation, Plaintiff and Class Counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, and adequate for the Settlement Class and that

it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Settlement.  (*Id.*)

## III.    THE PROPOSED SETTLEMENT

### A.    THE SETTLEMENT CLASS

The proposed Settlement would establish a Settlement Class for settlement purposes only, defined as:

> All persons or entities within the United States to whom Defendant or a third party acting on its behalf: (a) made one or more telephone calls to their cellular telephone number; (b) made two or more telephone calls while the call recipient's number was on the National Do Not Call Registry; and/or (c) made one or more calls after asking Defendant or a third party acting on Defendant's behalf to stop calling.

(Agreement ¶ 1.29.)

### B.    SETTLEMENT RELIEF

#### 1.    Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $2,750,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $60,000; and (5) a Court-approved Service Payment to the Plaintiff of up to $10,000.

Each Settlement Class Member whose telephone number is on the Class List and who submits a timely and valid claim form shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Service Payment, and Fees, Costs, and Expenses Awards are paid out of the Settlement Fund.  (*Id.* ¶ 3.2.1.)  If all the Fees, Costs and Expenses Awards, Service Payment, and Settlement Administration Expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $30.00 to $60.00.  The Settlement provides for a potential second

distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks, to the extent administratively feasible.  (*Id.* ¶ 3.7.)

### 2. Class Representative Service Payment

If approved by the Court, the Plaintiff will receive a Service Payment of $10,000 from the Settlement Fund.  This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case.

### 3. Attorneys' Fees and Costs

If the Settlement receives preliminary approval, Plaintiff's counsel will apply to the Court for a Fees, Costs, and Expenses Award in the amount of up to one-third of the total amount of the Settlement Fund in addition to out-of-pocket expenses.  As Plaintiff's counsel will address in their fee application, an award of attorneys' fees and costs will compensate Plaintiff's counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the Action.  Plaintiff's proposed attorney fee award (and costs) is plainly disclosed to the Settlement Class in the proposed notice and is wholly consistent with other cases.

### 4. Remaining Funds

Any amount remaining in the Settlement Fund after paying all Authorized Claimant Awards, Settlement Administration Expenses, and any Fees, Costs, and Expenses Award and Service Payment will be distributed to a Court-approved *cy pres* recipient.[4]  This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible.

---

[4] The Parties propose the Electronic Privacy Information Center as an appropriate *cy pres* recipient.

C.     NOTICE AND SETTLEMENT ADMINISTRATION

All Settlement Administration Expenses will be exclusively paid from the Settlement Fund.  The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm A.B. Data, Ltd. to be the Settlement Administrator (Agreement ¶ 1.28), to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court.  The Settlement Administrator's duties will include: (1) sending the Class Notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating requests for exclusion and objections; and (4) issuing Authorized Claimants' Individual Allocated Payment Amounts.

The Settlement Administrator will send Postcard Notice via the U.S. Postal Service—substantially in the form attached as Exhibit 3 to the Settlement Agreement—to the names and addresses of Settlement Class Members identified as being the owners or users of the phone numbers contained on the Class List.  (*Id.* ¶ 4.4.2.)  The Settlement Administrator will administer a Settlement Website, through which Settlement Class Members will be able to obtain further details and information about the Settlement.  (*Id.* ¶ 4.3.)

The anticipated administration costs are $509,617.90.  (Misny Decl. at ¶ 6.)  Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for the Postcard Notice to thousands of Settlement Class Members and maintenance of the Settlement Website.

D.     OPT-OUT AND OBJECTION PROCEDURES

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval.  (Agreement ¶¶ 6.1, 6.2.)  The procedures and deadlines for filing requests for exclusion and objections will be conspicuously listed in the Class Notice and

on the Settlement Website.  (*See id.* at Exs. 2-3.)  The Class Notice informs Settlement Class

Members that they will have an opportunity to appear and have their objections heard by this

Court at a Final Approval Hearing.  (*Id.*)  The Notice also informs Settlement Class Members

that they will be bound by the release contained in the Settlement unless they timely exercise

their opt-out right.  (*Id.*)

### E.  RELEASE

The release is appropriately tailored to this case involving alleged violations similar to

those alleged and is limited to those Settlement Class Members identified in the Class List.  In

exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the

Settlement will release Defendant from any and all claims against the Released Parties, arising

out of Defendant's telemarketing records obtained by Plaintiff through discovery.  (Agreement

¶¶ 1.23, 1.24, 1.25.)

## IV.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that the Court provisionally certify the proposed Settlement

Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3).  Such

certification will allow the Settlement Class to receive notice of the Settlement and its terms,

including the right to submit a claim and recover money if the Settlement is approved, the right

to be heard on the Settlement's fairness, the right to opt out of the Settlement, and the date, time

and place of the formal Settlement hearing.  For the following reasons, certification of the Class

for Settlement purposes is appropriate under Rule 23(a) and (b)(3).

### A.  RULE 23(a) REQUIREMENTS

Numerosity is satisfied.

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is no set minimum

number of potential class members that fulfills the numerosity requirement.  *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984).

The proposed Settlement Class consists of at least 543,354 identifiable members.  (*See* Misny Decl. at ¶ 10.)  Numerosity is therefore satisfied.

<u>Commonality is satisfied.</u>

Rule 23(a)(2) requires that there is "a common question of law or fact among the members of the class."  Fed. R. Civ. P. 23(a)(2).  To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the common questions are dispositive, apply equally to all class members, and can be resolved using uniform proof and legal analysis.  They include: (1) whether a telemarketing and/or an autodialed call was made to class members; (2) whether Defendant had express written consent to make the calls; (3) whether Defendant's conduct was willful and knowing such that Plaintiff and the class are entitled to treble damages; (4) whether Defendant used an automated telephone dialing system ("ATDS") to make the calls; and (5) whether Defendant had procedures in place to avoid calling numbers listed on the National Do Not Call Registry.  These legal and factual questions are shared by all class members, and the uniformity of the applicable law—the TCPA—makes resolution of these questions on a class-wide basis viable and efficient.

<u>Plaintiff's claims are typical of the Settlement Class.</u>

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied.  Typicality is satisfied where the claims are based on the same legal theory.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) ("The typicality requirement is met if a plaintiff's claim arises from the same

event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.").  Typicality does not require that every class representative have exactly the same claims as every member of the class.  *Moodie*, 309 F.R.D. at 378.

Here, Plaintiff's and Settlement Class Members' claims arise from the same course of events: automated telemarketing voice calls were made to Plaintiff and Settlement Class Members by Defendant to promote Defendant's goods and services.  Plaintiff and proposed Settlement Class Members all seek statutory damages for these calls pursuant to the same legal theory.  Typicality is therefore satisfied.

<u>Plaintiff and counsel will adequately represent the proposed Settlement Class.</u>

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy requirement involves "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000).

Both of these requirements are met.  Plaintiff's interests in this litigation are aligned with those of the class.  All seek recovery for unlawful calls pursuant to the TCPA.  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions in particular.  Class Counsel has vigorously litigated this Action for over three years and will continue to vigorously prosecute this matter through completion.  (*See* Misny Decl. ¶ 9; Declaration of Anthony Paronich ("Paronich Decl."), attached hereto as Exhibit D, at ¶ 9. Adequacy is therefore satisfied.

**B.      RULE 23(b)(3) REQUIREMENTS**

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Common issues predominate.

The predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quotation and internal marks omitted).  Predominance differs from the commonality requirement because it focuses "not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation."  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014).

This case is particularly well-suited for class treatment.  The central issues in this case are: (1) whether a telemarketing and/or voice call was made to class members; (2) whether Defendant had express written consent to make the calls; (3) whether Defendant's conduct was willful and knowing such that Plaintiff and the class are entitled to treble damages; (4) whether Defendant used an automated telephone dialing system ("ATDS") to make the calls; and (5) whether Defendant had procedures in place to avoid calling numbers listed on the National Do Not Call Registry.  A trial would focus on these common issues based on Defendant's testimony and records and expert testimony and would not require individualized proof from class members.

<u>A class action is superior</u>.

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy.  The superiority requirement is often met where, as here, class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding.  *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) (class treatment superior where it lowers litigation costs "through the consolidation of recurring common issues").

Since the claims are being certified for purposes of settlement, there are no issues with manageability.  *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  And, resolution of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication.  *See Gunnells*, 348 F.3d at 427 (noting class litigation "promotes consistency of results, giving defendants the benefit of finality and repose").

## V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.      THE SETTLEMENT APPROVAL PROCESS

A class action settlement requires court approval.  Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991).  As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Id*. at 158-159.  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit

the class could hope to obtain.  *See*, *e.g.*, *id.*; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process of "preliminary" and "final" approval.  *See Manual for Complex Litig.* ("MCL 4th") § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortg. Corp. of Am.,* No. 97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing MCL 4th's two-step process).  In the first stage, the parties submit the proposed settlement to the Court for preliminary approval.  In the second stage, following preliminary approval, the class is notified and a fairness hearing scheduled at which the Court determines whether to approve the settlement.  *See Bicking v. Mitchell Rubenstein & Assocs.,* No. 11-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011).  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1 (5th ed. 2016).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile.  *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (holding that the question at preliminary approval stage is simply whether there is "probable cause" to justify notifying class members of proposed settlement).

## B.     CRITERIA FOR SETTLEMENT APPROVAL

Fairness and adequacy are the touchstones of class action settlement approval.  *Jiffy Lube*, 927 F.2d at 158.  The factors that merit consideration during the approval process may be broken down into two major categories: those which go to "fairness" and those which go to "adequacy" of a settlement.  *Id.*

<u>The proposed Settlement is fair</u>.

Courts consider the following factors when determining whether a proposed settlement is fair: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. All four factors favor approving the Settlement here.

The Parties reached a Settlement after over three years of contentious litigation, including significant discovery (and disputes), substantive motion practice, and retention of experts and informal expert disclosures. (Misny Decl. at ¶ 3.) Defendant and the third parties subpoenaed in discovery produced thousands of pages of documents, including call logs, internal records, policies and procedures, contracts, and lead information. (*Id.*) Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in extensive formal discovery with Defendant and third parties.

Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations. In fact, Class Counsel have far exceeded the work often done in class actions to conduct a thorough analysis of the issues. *See, e.g., Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

The Settlement here is the result of extensive, arms'-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. (Misny Decl. at ¶ 5.) Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases.

(*Id.* at ¶¶ 11-12; Paronich Decl. at ¶ 2.)  Class Counsel zealously represented Plaintiff and the Settlement Class Members' interests throughout the litigation and continue to do so.

The Parties reached agreement only after a mediation with Judge Jay Gandhi (Ret.) from JAMS, months of discovery thereafter, and protracted negotiations.  (Misny Decl. at ¶ 5.)  At all times, the negotiations were at arms'-length and free from collusion.  (*Id.*)  Plaintiff's counsel steadfastly advocated for substantial settlement relief.  Plaintiff and Plaintiff's counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in class certification and the changing legal landscape concerning the TCPA.  (*Id.* at ¶ 4.)

Plaintiff relied on the judgment of his counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions.  In such circumstances, it may be presumed that a settlement is fair.  *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

<u>The proposed Settlement is adequate.</u>

In determining whether a settlement is adequate, courts consider (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.  *Jiffy Lube*, 927 F.2d at 159.

The most important factor in weighing the adequacy of a proposed settlement is the strength of the plaintiff's claims on the merits combined with any difficulties the plaintiff would likely encounter if they chose to litigate on their own.  *Berry v. Schulman*, 807 F.3d 600, 614

(4th Cir. 2015).  Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial.  Defendant denies any liability and is willing to litigate vigorously, as it has done for more than three years.  The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals.  (Misny Decl. at ¶ 4.)

Plaintiff's counsel also have taken into account the strength of Defendant's defenses, difficulties in proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation.  Plaintiff's counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class.  Based on their evaluation of all of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class, who otherwise may have received nothing.  (*Id.* at ¶ 5.)

The monetary relief, which is anticipated to result in a payment of between $30.00 and $60.00 per claimant, places the Settlement well within the range of possible approval.  Moreover, courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses.  Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved.  *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).  Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial.  *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting

that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").

"The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining.  Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

This Settlement provides an excellent result for the class and exceeds other TCPA settlements approved across the country. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD), 2015 U.S. Dist. LEXIS 137299, at *19 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member).

For all these reasons, the Settlement is well within the range of reasonableness and is otherwise fair and adequate.  It should therefore be preliminarily approved, and notice should be sent to the Settlement Class.

**VI.    THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice program satisfies this standard.  As recited in the Settlement and above, the Notice program will inform Settlement Class Members of the substantive terms of the Settlement.  It will advise Settlement Class Members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service award, for opting-out of the Settlement, and for submitting a claim.  Through the direct mailed Postcard Notice and Settlement Website, the Notice plan is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process.  (Misny Decl. ¶ 7.)

The proposed forms of Notice, attached as Exhibits 2 and 3 to the Agreement, are clear, straightforward, and provide Settlement Class Members with enough information to evaluate whether to participate in the Settlement.  Thus, the Notice satisfies the requirements of Rule 23 and due process.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).  The Notice program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VII.    PROPOSED SETTLEMENT APPROVAL SCHEDULE

In connection with preliminary approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing.  Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| | |
|---|---|
| Last day for Settlement Class Counsel to provide the Settlement Administrator the Class List | On or before 14 days after entry of Preliminary Approval Order |
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, email address, and P.O. Box to accept inquiries from Settlement Class Members | On or before 30 days after entry of Preliminary Approval Order |
| Settlement Administrator provides Notice to Settlement Class Members | On or before 30 days after entry of Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Fees, Costs, and Expenses Award and apply for Service Payment | On or before 69 days after entry of Preliminary Approval Order |
| Last day for Settlement Class Members to file Claim Forms, object, or request exclusion from the Settlement Class | On or before 90 days after entry of Preliminary Approval Order |

## VIII.   CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's preliminary approval, and Plaintiff's counsel respectfully requests that the motion be granted.

Respectfully submitted,

**/s/ Jonathan P. Misny**
Jonathan P. Misny (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

Stephen H. Ring
Stephen H. Ring, PC
9901 Belward Campus Drive, Suite 175
Rockville, MD 20850
Telephone: 301.563.9249
USDC-MD Attorney No. 00405
shr@ringlaw.us

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on December 14, 2022, I caused the foregoing to be filed via the Court CM/ECF filing system which will effect service on all counsel of record.

**/s/ Jonathan P. Misny**
Jonathan P. Misny

- 20 -