**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| DAN L. BOGER, *on behalf of himself and others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 19-cv-01234-LKG |
| v. | ) ) | Date:   June 1, 2023 |
| CITRIX SYSTEMS, INC., | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER ON PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.     INTRODUCTION**

Plaintiff, Dan L. Borger, brings an unopposed motion for final approval of class action settlement to settle certain claims on behalf of himself, and a class of similarly situated individuals, against Defendant, Citrix Systems, Inc.  ECF No. 63.  The proposed settlement agreement and release (the "Settlement Agreement") resolve alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Maryland Telephone Consumer Protection Act ("MTCPA"), Md. Code Ann. Com. Law § 14-3201.  *See generally* ECF No. 56-1.  Mr. Boger has also moved for an award of attorney's fees, expenses and class representative award.  ECF No. 60.

The Court held a fairness hearing on May 10, 2023.  No class members have objected to the proposed Settlement Agreement.

For the reasons stated during the fairness hearing, and set forth below, the Court: (1) **GRANTS** Mr. Boger's motion for final approval of class action settlement and (2) **GRANTS** Mr. Boger's motion for an award of attorney's fees, expenses and class representative award.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.  Factual Background

<u>The Plaintiffs' Claims</u>

This civil action involves alleged violations of the TCPA, which prohibits, among other things: (1) initiating a telephone call using an automated dialing system to telephone numbers assigned to a cellular telephone service; (2) making any call for telemarketing purposes to any residential subscriber on the National Do Not Call Registry; and (3) making any call for telemarketing purposes to any residential, or wireless telephone subscriber, unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity.  *See* 47 U.S.C. § 227(b)(1) and (c).[2]

Plaintiff, Dan L. Boger, is an individual residing in Maryland who received five solicitation calls from Defendant to his cellular telephone number, despite previously placing his number on the National Do Not Call Registry.  ECF No. 56 at 2.  Plaintiffs allege that Defendant violated the TCPA by, among other things, placing unsolicited telemarketing calls to him and to the members of the class on residential and cellular telephone numbers.  *Id.* at 3.

Mr. Boger commenced this class action on April 26, 2019.  ECF No. 1.  Thereafter, the parties engaged in informal discovery, and they participated in a mediation on April 26, 2022, with Judge Jay Gandhi (Ret.).  ECF No. 56 at 3.  The parties did not reach a settlement at that time.  *Id.*  And so, the parties engaged in further discovery over several months.  *Id.*  On or about November 17, 2022, the parties tentatively agreed to a potential settlement (the "Settlement") of this case.  *Id.*

On January 31, 2023, the Court granted Mr. Boger's unopposed motion for preliminary approval of class settlement and entered an Order conditionally certifying a settlement class, preliminarily approving the class action settlement, approving the notice plan, and appointing a claims and notice administrator.  ECF No. 59.  Since then, Mr. Boger has filed memoranda in

---

[1]  The facts recited herein are taken from the complaint and Plaintiff's Motion for Final Approval of Class Action Settlement.  Unless otherwise stated, the facts recited herein are undisputed.

[2]  Plaintiff also alleges a claim under the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq*.

support of Plaintiffs' motion for final approval of the class action settlement.  ECF No. 63.  Mr. Boger and Class Counsel have also filed a motion for approval of attorney's fees, reimbursement of expenses, and for a service payment award to the class representative.  ECF No. 60.

The Settlement Agreement

The proposed Settlement would establish a "Settlement Class" defined as follows:

> All persons or entities within the United States to whom Defendant or a third party acting on its behalf: (a) made one or more telephone calls to their cellular telephone number; (b) made two or more telephone calls while the call recipient's number was on the National Do Not Call Registry; and/or (c) made one or more calls after asking Defendant or a third party acting on Defendant's behalf to stop calling.

ECF No. 56-1, Settlement Agreement at ¶ 1.29.  The key provisions of the Settlement Agreement are summarized below.

First, the proposed Settlement Agreement would establish a non-reversionary $2,750,000 Settlement Fund (the "Settlement Fund"), which will exclusively be used to pay: (1) cash settlement awards to settlement class members; (2) settlement administration expenses; (3) court-approved attorney's fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out-of-pocket expenses not to exceed $60,000; and (5) a Court-approved service payment to the Plaintiff of up to $10,000.  ECF No. 56 at 5.

The Settlement Agreement also provides that each Settlement Class Member whose telephone number is on the Class List and who submits a timely and valid claim form shall be entitled to receive an equal *pro rata* amount of the Settlement Fund, after all settlement administrative expenses, service payment, and fees, costs and expenses awards are paid out of the Settlement Fund.  ECF No. 56-1, Settlement Agreement at ¶ 3.2.1.[3]  If approved by the Court, Mr. Boger will receive a service payment of $10,000 from the Settlement Fund (the "Class Representative Service Payment").  *Id.* at ¶ 2.1.3.

---

[3] The Settlement Agreement also provides for a potential second distribution for any funds remaining due to uncashed settlement distribution checks to those Settlement Class Members that cashed their first distribution checks.  ECF No. 56-1, Settlement Agreement at ¶ 3.7.

Second, the Settlement Agreement provides that, upon preliminary approval, Mr. Boger's counsel will apply to the Court for a fees, costs and expenses award in the amount of up to one-third of the total amount of the Settlement Fund, in addition to out-of-pocket expenses. *Id.* at ¶ 2.1.4.  The Settlement Agreement further provides that any amount remaining in the Settlement Fund, after paying all authorized claimant awards, settlement administration expenses, and any fees, costs and expenses award and service payment, will be distributed to a Court-approved *cy pres* recipient. *Id.* at ¶¶ 3.5, 3.6, 3.8.

The Settlement Agreement further provides that all settlement administration expenses will be exclusively paid from the Settlement Fund.  In this regard, the parties propose that the nationally recognized class action administration firm A.B. Data, Ltd. be the Settlement Administrator and implement the Class Notice and administer the Settlement. *Id.* at ¶ 1.28.  The Settlement Administrator's duties will include: (1) sending the class notice to the Settlement Class pursuant to the Settlement; (2) responding to inquiries regarding the settlement process from persons in the Settlement Class; (3) processing and evaluating requests for exclusion and objections; and (4) issuing Authorized claimants' individual allocated payment amounts.  The Settlement Administrator has sent Postcard Notice *via* the U.S. Postal Service to the names and addresses of Settlement Class members identified as being the owners or users of the phone numbers contained on the Class List (the "Settlement Class Members").  ECF No. 63-1, Devery Decl. at ¶ 4.  The Settlement Administrator has also administered a settlement website, through which Settlement Class Members will be able to obtain further details and information about the Settlement. *Id.* at ¶ 6.  The estimated administration costs are $509,617.90. *See id.* at ¶ 11.

Pursuant to the opt-out and objection procedures in the Settlement Agreement, persons in the Settlement Class have had the opportunity to exclude themselves from the Settlement or to object to its approval.  ECF No. 56-1, Settlement Agreement at ¶¶ 6.1, 6.2.  Currently, 23 potential Class Members have submitted requests for exclusion form the Settlement.  ECF No. 63-1, Devery Decl. at ¶ 8; ECF No. 67.

<u>Notice</u>

In addition, the Class Notice that has been provided to the Settlement Class Members informs Settlement Class Members that had an opportunity to appear and to have their objections heard by the Court at the final approval hearing. *Id.*  This Notice also informed the Settlement

Class Members that they will be bound by the release contained in the Settlement Agreement, unless they timely exercise their opt-out right.  *Id.*  In this regard, the release provides that:

> Released Claims.  Any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Preliminary Approval Order, that arise out of or relate in any way to the Released Parties' use of any telephone, cell phone, calling or dialing software or platforms, or an "automatic telephone dialing system," or an "artificial or prerecorded voice" to contact or attempt to contact Settlement Class Members. This release expressly includes, but is not limited to, all claims under the Telephone Consumer Protection Act or any corollary state law.
> The Released Claims include any and all claims that were brought or could have been brought in the Action.

ECF No. 56-1, Settlement Agreement at ¶¶ 1.23, 1.24, 1.25.

The Settlement Administrator sent notice via the U.S. Postal Service to 526,544 Class Members for which mailing address data was available.  ECF No. 63-1, Devery Decl. at ¶ 4.  As of April 26, 2023, 488,904 of the notices were delivered—a deliverable rate of 89.9%.  *Id.* at ¶ 5.

The Settlement Administrator also administered a settlement website, through which the Class Members could obtain additional information about the Settlement.  *Id.* at ¶ 6.  In addition, the Settlement Administrator established a toll-free number for Class Members to access or call.  *Id.* at ¶ 7.

To date, 29,942 claims have been submitted, which results in a claim rate of 6%.  *Id.* at ¶ 8.  Of these claims, the preliminary number of claims eligible for payment is 28, 400.  *Id.*  Each approved claimant is anticipated to receive a payment in the amount of $44.14.  *Id.* at ¶ 11.  There have been no objections with respect to any aspect of the Settlement, including the attorney's fees, expenses and class representative award.  *Id.* at ¶ 10.

Mr. Boger and the other Settlement Class Members request that the Court finally approve the Settlement Agreement.  ECF No. 63.  Mr. Boger and the other Settlement Class Members also request that the Court approve an attorney's fees, costs and expenses award to Class Counsel

of one-third of the Settlement Fund ($916,666.67) and reimbursement of out-of-pocket expenses to Class Counsel in the amount of $59,974.41.  ECF No. 60

### B.  Relevant Procedural History

Mr. Boger commenced this class action on April 26, 2019.  ECF No. 1.  On December 14, 2022, he filed an unopposed motion for preliminary approval of class action settlement and a proposed settlement agreement, which the Court granted and preliminarily approved on January 31, 2023.  ECF Nos. 56, 59.

On April 12, 2023, Mr. Boger, on behalf of the Class, filed a motion for award of attorney's fees, reimbursement of expenses, and service payment to the class representative. ECF No. 60.

On April 26, 2023, Mr. Boger, on behalf of the Class, filed an unopposed motion for final approval of class action settlement.  ECF No. 63.

On May 10, 2023, the Court held a fairness hearing.[4]

## III.   STANDARDS FOR DECISION

### A.  Class Certification

To certify a class, Plaintiffs must satisfy all four requirements of Rules 23(a), and at least one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure.  *In re Under Armour Sec. Litig.*, No. CV RDB-17-0388, 2022 WL 4545286, at *3 (D. Md. Sept. 29, 2022) (citing *Gunnells v. Health Servs. Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).  Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> > (1) the class is so numerous that joinder of all members is impracticable;
> > (2) there are questions of law or fact common to the class;

---

[4] During the fairness hearing, the Court requested that the parties submit more information about Class Counsel's expenses in the matter and the final number of requests for exclusion for the Settlement Class. On May 11, 2023, Brian K. Murphy filed a declaration containing additional detail about Class Counsel's expenses in the matter.  ECF No. 66.  On May 18, 2023, Plaintiffs also filed a status report informing the Court that no additional requests for exclusion had been submitted since the fairness hearing.  ECF No. 67.

(3) the claims or defenses of the representative parties are typical of
the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the
interests of the class.

Fed. R. Civ. P. 23(a).

To meet the numerosity requirement under Rule 23(a), there must be a showing that the
proposed class is so numerous that "joinder of all members is impractical." *Starr v. Credible
Behav. Health, Inc.*, No. CV 20-2986 PJM, 2021 WL 2141542, at *3 (D. Md. May 26, 2021)
(quoting Fed. R. Civ. P. 23(a)).  In this regard, the United States Court of Appeals for the Fourth
Circuit has held that a class with more than 30 members generally satisfies this requirement.  *See
id.* (citing *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005)).

The commonality requirement is satisfied when the prospective class members share the
same central facts and applicable law.  *Id.* (citing *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d
486, 499 (D. Md. 2010)).  In addition, to meet the typicality requirement, "[t]he claims need not
be identical, but the claims or defenses must have arisen from the same course of conduct and
must share the same legal theory."  *Id.* (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D.
492, 498 (D. Md. 1998)).

Lastly, "the adequacy-of-representation requirement centers on: (1) class counsel's
competency and willingness to prosecute the action and (2) whether any conflict of interest exists
between the named parties and the class they represent."  *Id.* (citing *Robinson v. Fountainhead
Title Grp. Corp.*, 252 F.R.D. 275, 288 (D. Md. 2008)).  And so, "[r]epresentation is adequate if
the [Plaintiff's] attorneys are qualified and able to prosecute the action on behalf of the class."
*Id.* (citing *Cuthie*, 743 F.2d at 499).

Federal Rule of Civil Procedure 23(b)(3) also provides that:

A class action may be maintained if Rule 23(a) is satisfied and if: . . . . (3)
the court finds that the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that
a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy.

Fed. R. Civ. P. 26(b)(3). "Where the purported class members were subject to the same harm
resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the

defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr*, 2021 WL 2141542, at *4 (citing *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)).  In addition, the Court must also consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *3 (D. Md. Apr. 25, 2016).

### B.  Final Approval Of Class Action Settlement

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval, which may issue "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) provides that the Court may find that the Settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

In this regard, the Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)."  *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).  To determine a settlement's fairness, the Court

considers: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation. *Id.* (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159).

In assessing the adequacy of the settlement, the Court must consider: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019).

The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022); *see also Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022). But, the Fourth Circuit has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Banner Life Ins. Co.*, 28 F.4th at 527 (quoting *Sharp Farms*, 917 F.3d at 303–04).[5]

---

[5] "To the extent that reasonableness does any work not already performed by one of the other Rule 23(e) (2) requirements, [ ] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). The Fourth Circuit has "never required [ ] an estimate" of what the class members would have received had they prevailed at trial. *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022). The Court is not required to "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," rather "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id.* (quotations and citations omitted).

### C.  Attorney's Fees In Class Actions

In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement.  Fed. R. Civ. P. 23(h).  The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case."  *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022).  "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check."  *See Donaldson v. Primary Residential Mortg., Inc.*, Civ. No. ELH-19-1175, 2021 WL 2187013, at *8 (D. Md. May 28, 2021); *see also Starr*, 2021 WL 2141542, at *5 (quoting *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) ("In the Fourth Circuit, 'the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees' in class actions.").

District courts in this circuit have analyzed the following seven factors in determining whether a requested percentage is reasonable: "(1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy[.]"  *Feinberg*, 610 F. Supp. 3d at 771; *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013); *see also Kelly v. Johns Hopkins Univ.*, Civ. No. 16-2835-GLR, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020) (same); *Donaldson*, 2021 WL 2187013, at *8 (same).  Courts need not apply the factors in a "formulaic way" and may weigh the factors as appropriate for a particular case.  *Singleton*, 976 F. Supp. 2d at 682.

The lodestar amount is defined as a "reasonable hourly rate multiplied by hours reasonably expended."  *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F. 3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990)) (quotations omitted); *see also De La Cruz v. Chopra, et al.*, No. 18-0337, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (citations omitted) (The lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate.").

## IV.   LEGAL ANALYSIS

Plaintiffs request that the Court grant final approval of the Settlement Agreement and certify the proposed Settlement Class.  *See generally* ECF No. 63.  In addition, Plaintiffs request that the Court award Class Counsel attorney's fees in the amount of $916,666.67, and costs in the amount of $59,974.41, as well as award a service payment of $10,000 to Mr. Boger as Class Representative.  ECF No. 60.

For the reasons discussed below, the proposed Settlement Class and the proposed Settlement Agreement comport with the requirements of Rule 23.  And so, the Court CERTIFIES the Settlement Class and APPROVES the Settlement Agreement.

### A.   Certification Of Settlement Class

The Court must first determine whether it should certify the Rule 23 Class.  For the reasons stated below, the Court CERTIFIES the Rule 23 Class in this matter.

To certify a class, the Court must confirm that this action comports with Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23(a)-(b); *see Starr*, 2021 WL 2141542, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)); *see also Shaver*, 2016 WL 1625835, at *3 ("Where a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).").  Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The requirements of Rule 23(a) have been met in this case.  First, the numerosity requirement under Rule 23(a) is satisfied here, because the proposed Settlement Class consists of

at least 543,354 identifiable members.  ECF No. 56-3, Misny Decl. at ¶ 10; *see also Starr*, 2021 WL 2141542, at *3 (a class with more than 30 members generally satisfies the numerosity requirement.); *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (there is no set minimum number of potential class members that fulfills the numerosity requirement.).

Commonality is also satisfied, because Plaintiffs have shown that the proposed Settlement Class Members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Here, the proposed Settlement Class Members have suffered the same injury due to the Defendant, or a third party acting on its behalf, either: (1) making one or more telephone calls to their cellular telephone number; (2) making two or more telephone calls while the call recipient's number was on the National Do Not Call Registry; and/or (3) making one or more calls after asking Defendant or a third party acting on Defendant's behalf to stop calling.  ECF No. 56 at 9.

The Class Members also share common questions of law and fact including: (1) whether a telemarketing and/or an autodialed call was made to Class Members; (2) whether Defendant had express written consent to make such calls; and (3) whether Defendant's conduct was willful and knowing such that Plaintiff and the class are entitled to treble damages.  *Id.*

For similar reasons, the claims or defenses of the Mr. Boger are typical of the claims or defenses of the Class Members, so that the typicality requirement is also satisfied.  *Starr*, 2021 WL 2141542, at *3 (citing *Peoples*, 179 F.R.D. at 498) ("[T]o meet the typicality requirement, the . . . claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same legal theory.").  As discussed above, the claims of Mr. Boger and the Class Members are based upon the same legal theory and these claims arise from the same course of conduct—automated telemarketing voice calls that were made to Mr. Boger and the Class Members by Defendant.  Given this, Mr. Boger's interests in this litigation are aligned with those of the Class Members.

The Court is also satisfied that Mr. Boger and Class Counsel have adequately represent the Class Members.  "[T]he adequacy-of-representation requirement centers on: (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent."  *Id.* (citing *Robinson*, 252

F.R.D. at 288).  And so, "[r]epresentation is adequate if the [Plaintiffs'] attorneys are qualified and able to prosecute the action on behalf of the class." *Id.*

Here, Mr. Boger and the Class Members are represented by qualified and competent Class Counsel, who have extensive experience and expertise prosecuting complex class actions including class actions bought pursuant to the TCPA.  *See* ECF No. 60-1, Murphy Decl.; *see also* Murphy Decl., ECF No. 63-2 at ¶ 10; ECF No. 60-2, Paronich Decl.  Johnathan P. Misny, Esq. has more than 10 years of legal experience, and Brian K. Murphy, Esq. has more than 29 years of legal experience.  ECF No. 60-1, Murphy Decl. at ¶¶ 11-13.  Both of these attorneys are affiliated with the law firm Murray, Murphy, Moul, & Basil, LLP, a well-established securities litigation firm that has participated in numerous class action matters.  *Id.* at ¶¶ 14-19.

Class Counsel also includes Anthony I. Paronich, with the law firm of Paronich Law, P.C.  *See generally* Paronich Decl, ECF No. 60-2.  Mr. Paronich has more than 13 years of legal experience and he has been appointed as class counsel in more than 45 TCPA cases.  *Id.* at ¶¶ 4, 8.  Notably, these three attorneys have litigated this matter for more than three years.  *Id.* at ¶ 9; Murphy Decl., ECF No. 63-2 at ¶ 10.  And so, the adequacy requirement is satisfied in this case.

The Court is also satisfied that the requirements of Rule 23(b) have been met in this case. If Rule 23(a) is satisfied, a class action may be maintained if the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b).  "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied."  *Starr*, 2021 WL 2141542, at *4 (citing *Stillmock*, 385 F. App'x at 273.

In this case, Plaintiffs have shown that common issues predominate.  The key issues in this case are: (1) whether a telemarketing and/or voice call was made to Class Members; (2) whether Defendant had express written consent to make the calls; (3) whether Defendant's conduct was willful and knowing such that Plaintiff and the Class are entitled to treble damages; (4) whether Defendant used an automated telephone dialing system to make the calls; and (5) whether Defendant had procedures in place to avoid calling numbers listed on the National Do

Not Call Registry.  ECF No. 56 at 11.  Given this, the controversy at the heart of this litigation is whether Defendant made calls to numbers listed on the National Do Not Call Registry without the recipient's consent.  And so, any trial in this matter would focus on these common issues and the trial would not require individualized proof from Class Members, thereby satisfying the predominance requirement.

Plaintiffs have also shown that a class action litigation is superior to other available methods for adjudicating this controversy.  Class Counsel estimate that the average Settlement payment to each Class Member would be approximately $30.00 to $60.00.[6]  Given this, the individual claims of each Class Member would be too small to justify individual lawsuits.  And so, the Court agrees with Plaintiffs that a class action would save litigation costs, by permitting the parties to assert their claims and defenses in a single proceeding.  *Gunnells*, 348 F.3d at 426 (class treatment superior where it lowers litigation costs "through the consolidation of recurring common issues").

Because the Court finds that the Class, as defined in the Court's Preliminary Approval Order, meets all of the legal requirements for class certification, for settlement purposes only, under Federal Rule of Civil Procedure 23 (a) and (b)(3), the Court CERTIFIES the Class pursuant to Rule 23.

**B.     Final Approval Of Settlement**

The Court must next determine whether it can grant final approval of the Settlement Agreement.  For the reasons set forth below, the Court APPROVES the Settlement Agreement.

**1.   The Settlement Agreement Is Fair**

First, the Court is satisfied that the Settlement Agreement is fair.  The Court looks to the factors set forth in Fed. R. Civ. P. 23(e)(2), when considering whether to approve a class action settlement.  These factors provide that the Court may find that the Settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

---

[6] The estimated payment to each approved claimant is $44.14, if the Court awards the requested attorney's fees, costs and service payments.  ECF No. 63-1, Devery Decl. at ¶ 11.

(C) the relief provided for the class is adequate, taking into account:
　　(i) the costs, risks, and delay of trial and appeal;
　　(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
　　(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
　　(iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  In this regard, the Fourth Circuit has instructed that the Court specifically considers: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding negotiations; and (4) the experience of counsel in the area of class action litigation.  *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159).  These factors weigh in favor approving the Settlement Agreement at issue for several reasons.

First, with regards to the current posture of this case, Mr. Boger commenced this action in April 2019.  ECF No. 1. The parties subsequently litigated this matter for three years before they reached the proposed Settlement.  *See* ECF No. 60-1, Murphy Decl. at ¶ 6.  Given this, the parties have had sufficient opportunity to understand the issues and the evidence in this case, and to reach a well-informed settlement.

The Settlement Agreement also appears to be result of an arm's-length negotiation between experienced attorneys who are familiar with class action litigation and the specific legal and factual issues of this case.  *Id.* at ¶¶ 7-8.  Notably, Plaintiffs and Defendant have been represented by experienced counsel during the settlement negotiations.  *Id.*

The method for distributing relief to the Class Members is also fair and reasonable.  The Settlement Agreement provides that the payments to eligible Class Members will be calculated and apportioned based upon a *pro rata* share of the net Settlement Fund.  ECF No. 56-1, Settlement Agreement at ¶ 3.2.2.  The Settlement Agreement also allows the eligible Class Members to elect to receive payment by either, check, PayPal, or any other electronic payment format recommended by the Settlement Administrator and agreed upon by the parties.  *Id.* at ¶ 3.3.  And so, for each of these reasons the Court is satisfied that the Settlement Agreement is fair.

### 2.   The Settlement Agreement Is Adequate

The Court is also satisfied that the proposed Settlement Agreement is adequate.  In determining whether a settlement is adequate, the Courts considers: (1) the relative strength of the Plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the Plaintiff is likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the Defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the Settlement.  *Jiffy Lube*, 927 F.2d at 159.  In this regard, the Fourth Circuit has held that the most important factor in weighing the adequacy of a proposed settlement is the strength of the Plaintiffs' claims on the merits, combined with any difficulties the Plaintiffs would likely encounter if he chose to litigate on his own.  *Berry*, 807 F.3d at 614.

In this case, Mr. Boger and Class Counsel maintain that the claims asserted in this case are meritorious and that Mr. Boger and the other Class Members would prevail if this matter proceeded to trial.  *See* ECF No. 63 at 12-13.  But Mr. Boger and Class Counsel also acknowledge the strength of Defendant's defenses in this matter, and the other risks associated with continuing this litigation.  ECF No. 63-2, Murphy Decl. at ¶ 9.

Notably, Class Counsel explains that there is risk of an unfavorable change in the law that could defeat Class Members' claims, due to the ongoing scrutiny regarding what constitutes an "autodialer" in light of the Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), and the constitutionality of the TCPA in light of the Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335 (2020).  ECF No. 63 at 12; *see also Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 296 (D.S.C. 2021) (finding that under the Supreme Court's ruling in *Facebook*, to be an autodialer, a system must randomly or sequentially generate the telephone numbers to be called); *Creasy v. Charter Communs., Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr* are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*); ECF No. 56 at 3.

The parties also considered the expense of continued litigation in deciding to reach the proposed Settlement.  ECF No. 63 at 15.  As Mr. Boger and Class Counsel explain, there could

be impediments to the Class Members' ability to collect any judgment in this case, given the current economic climate. *Id.*

The Court also observes that there is no opposition to the proposed Settlement. In addition, the expected settlement payment for each Class Member is $44.14, which exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims. *See, e.g.*, *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-94 (N.D. Ill. 2015) ($30); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (approving settlement with payments estimated to be between $20 and $40; actual payments were $46.98); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Adams v. AllianceOne Receivables Mgmt.*, No. 08-cv-248, 2012 U.S. Dist. LEXIS 208551 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members); *see also Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher).[7] Notably, the Class Members will be treated equitably, and equally, relative to each other, because they will all receive the same settlement payment. ECF No. 56-1, Settlement Agreement at ¶ 3.2.1.

The Court is also satisfied that the service payment of $10,000 to Mr. Boger as the Class Representative is also reasonable. The Settlement Agreement provides that the Settlement Fund

---

[7] By comparison, the TCPA provides for statutory damages in the amount of $500 for each violation. 47 U.S.C. § 227 (c)(5)(B). But, the Settlement need not represent a complete victory for Plaintiff and the Class Members to be approved by this Court. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)) (Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved.); *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").

will be used to pay, among other things, a Court-approved service payment to Mr. Boger of up to $10,000. *Id.* at ¶ 2.1.3. The record before the Court shows that Mr. Boger took steps to protect the interests of the Class and that he spent a considerable amount of time pursuing the claims underlying this matter. And so, Mr. Boger's actions in this litigation have directly benefited the Class Members.

The amount of the Service Payment to Mr. Boger—$10,000—is also on the lower end of incentive awards that courts have approved in comparable TCPA matters. *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, at *6-7 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 incentive award from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative). And so, the Court is satisfied that the Service Payment is reasonable.[8]

### C.     Notice

The Court also finds that Notice has been provided to the Class Members is in compliance with the Court's Preliminary Approval Order (ECF No. 59 at 17-18), Section 4 of the Settlement Agreement, due process and Rule 23 of the Federal Rules of Civil Procedure.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *McAdams*, 26 F.4th at 158 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114

---

[8] The proposed reimbursement of the administration costs of the Settlement Administrator in the amount of $509,617.90 is also reasonable. As Plaintiffs explain, the Settlement Administrator sent notice to 526,544 individuals and administered the settlement website and a toll-free number to provide information about the Settlement. ECF No. 63-1, Devery Decl. at ¶¶ 4, 6-7. Given the magnitude of the Settlement Class, and the duties of the Settlement Administrator, these costs are reasonable.

(2d Cir. 2005)).  And so, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* at 157-58 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

As discussed above, the Settlement Administrator sent Notice *via* the United States Postal Service to 526,544 Class Members for which mailing address data was available.  ECF No. 63-1, Devery Decl. at ¶ 4.  As of April 26, 2023, 488,904 of the notices have been delivered—resulting in a deliverable rate of 89.9%.  *Id.* at ¶ 5.  The Settlement Administrator also administered a settlement website and a toll-free number, through which the Class Members could obtain additional information about the Settlement.  *Id.* at ¶¶ 6, 7.

The Notice provided Class Members with, among other things, details regarding the nature of this lawsuit, the terms of the Settlement Agreement, the release of all claims under both state law and federal law, information regarding objecting to the proposed settlement, and the fairness hearing.  *See id.* at 10-11.  Because the Class Members have been provided with sufficient information to evaluate whether to participate in the Settlement, the Court is satisfied that the Notice for this matter is consistent with Rule 23.

### D.     The Attorney's Fees And Costs Are Reasonable

As a final matter, the Court considers whether the requested attorney's fees, costs and expenses award to Class Counsel is reasonable.  Class Counsel seek $916,667.67 in attorney's fees, which is one-third of the Settlement Fund, and costs in the amount of $54,974.41.  ECF No. 60.  The Settlement Agreement provides for the payment of attorney's fees, costs and expenses of up to one-third of the total amount of the Settlement Fund.  *See* ECF No. 56-1, Settlement Agreement at ¶ 2.1.4.

Rule 23 permits a court to award "reasonable attorney's fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In this regard, the Fourth Circuit has held that "[t]here are two main methods for calculating the reasonableness of attorney's fees— the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams*, 26 F.4th at 162.  "Courts in this circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check."  *Donaldson*, 2021 WL 2187013, at

*8; *see also Starr*, 2021 WL 2141542, at *5 (quoting *Savani*, 121 F. Supp. 3d at 568) ("In the Fourth Circuit, 'the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees' in class actions.").

To determine whether a requested percentage of a settlement is a reasonable award for attorney's fees, the Court considers: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *Feinberg*, 610 F. Supp. 3d at 771; *Singleton*, 976 F. Supp. 2d at 682 (D. Md. 2013); *see also Kelly*, 2020 WL 434473, at *2 (same); *Donaldson*, 2021 WL 2187013, at *8 (same). But the Court need not apply these factors in a "formulaic way" and may weigh the factors as appropriate for a particular case. *Singleton*, 976 F. Supp. 2d at 682. In this regard, "[a] request for one-third of a settlement fund is common in this Circuit and generally considered reasonable." *Starr*, 2021 WL 2141542, at *5 (citing *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018)); *see also Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (collecting cases on percentage-of-recovery fee awards and finding that, generally, attorney's fee awards between 25% and 33% are reasonable).

In this case, the attorney's fee award in the amount of $916,667.67 is reasonable for several reasons. First, as to the results obtained and the skill of Class Counsel, Class Counsel achieved a good result for the Class Members in this case, given the potential defenses to their claims. The quality of Class Counsel's legal work is also evidenced by the substantial benefit conferred to the Settlement Class in the face of significant litigation obstacles. ECF No. 60 at 11; ECF No. 60-1, Murphy Decl. at ¶ 7. Class Counsel are also experienced in TCPA litigation, and the settlement of nationwide TCPA class action cases. ECF No. 60-1, Murphy Decl. at ¶ 10; ECF No. 60-2, Paronich Decl. at ¶¶ 2, 8; ECF No. 60-3, Ring Decl.

Second, as to the parties acknowledge, there is some risk of non-payment in this case if the litigation were to proceed, because Class Counsel have been working on a contingency basis, so that only a successful result in this case—at trial or by settlement—would result in the recovery of attorney's fees and costs. ECF No. 60-1, Murphy Decl. at ¶ 23. Given this, the contingent nature of Class Counsel's representation favors approval of the requested attorney's fees.

Lastly, Class Counsel's requested award of attorney's fees falls within the range of fee awards in similar cases. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2019 WL 7066834, at *7 (M.D.N.C. Dec. 23, 2019) (court awarded attorney's fees of one-third of a $61,000,000 judgment in TCPA case); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016) (affirming attorney's fees constituting one-third of a settlement fund in a TCPA case); *Martin*, 2014 WL 9913504, at *3 (one-third of total fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 1:08CV-05959, 2011 WL 13268072, at *2 (N.D. Ill. Dec. 21, 2011) (fees equal to one-third of the settlement fund plus expenses); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at *7-8 (N.D. Cal. Sept. 27, 2018) (approving fees of 30% of the settlement fund in a TCPA case which settled after briefing of and prior to ruling on defendant's motion to dismiss and motion to stay); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees of one-third on TCPA class action); *Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 WL 11674408, at *2-3 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000 TCPA settlement fund); *Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019) (awarding class counsel fees of one-third the settlement fund in a TCPA class action). Notably, there also have been no objections with respect to any aspect of the Settlement, including the proposed award of attorney's fees. ECF No. 60-1, Murphy Decl. at ¶ 10. And so, the Court is satisfied that proposed attorney's fee award here is reasonable.

Finally, the Court is also satisfied that a reimbursement of certain out-of-pocket expenses to Class Counsel in the amount of $59,974.41 is appropriate in this case. Rule 23(h) permits the Court to "award … nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Settlement Agreement also permits Class Counsel to seek reimbursement for their reasonable expenses in this litigation. Settlement Agreement at 2.1.4.

Class Counsel have provided the Declaration of Brian K. Murphy, which states that Class Counsel have incurred expenses during the litigation of this class action in the amount of $59,974.41, which consists of $37,300.79 in expert witness fees; $13,475 in mediation costs; $2,878.52 in expenses for document/data production, legal research and shipping; $5,920.10 in travel costs; and $400 for the Court's filing fee. ECF No. 66, Murphy Decl. at 2. Given this, the Court is satisfied that Class Counsel has incurred the litigation expenses that they seek to recoup

and that these expenses were appropriately incurred during this multi-year litigation.  And so, the Court will award Class Counsel attorney's fees in the amount of $916,667.67 and costs in the amount of $59,974.41.

## V.      CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's consent motion for final approval of class action settlement.

2. **CERTIFIES** the Rule 23 Class. The Class is certified as a class of: all persons within the United States to whom Defendant and/or a third party acting on its behalf (a) made one or more telephone calls to their cellular telephone number; (b) made two or more telephone calls while the call recipient's number was on the National Do Not Call Registry; and/or (c) made one or more calls after asking Defendant to stop calling.

3. **APPROVES** the Settlement Agreement.

4. **APPROVES** a Service Payment Award to Mr. Boger in the amount of $10,000.

5. **APPROVES** reimbursement of administration costs to the Settlement Administrator in the amount of $509,617.90.

6. **APPROVES** an attorney's fees award to Class Counsel in the amount of $916,667.67 and costs in the amount of $59,974.41.

**IT IS FURTHER ORDERED THAT:**

7. This Order applies to all claims or causes of action settled under the Settlement Agreement and binds all Settlement Class Members, including those who did not properly request exclusion. This Order does not bind persons who filed timely and valid requests for exclusion.

8. Citrix is directed to provide the Settlement Fund to the Settlement Administrator according to the terms and timeline stated in the Settlement Agreement. The Settlement Administrator is further directed to issue payments to each Settlement Class Member who submitted a valid and timely Claim Form (*i.e.*, each Authorized Claimant) according to the terms and timeline stated in the Settlement Agreement.

9.  At the parties' request, the Court will retain jurisdiction over this action and the
    parties for all purposes related to this Settlement.


**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
